1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12   JAMES WEST,                          Case No. 17-CV-00238-LHK

13              Plaintiff,                **ORDER GRANTING IN PART AND
                                          DENYING IN PART DEFENDANTS'
14        v.                              MOTION TO DISMISS WITH LEAVE
                                          TO AMEND**
15   PALO ALTO HOUSING CORPORATION,
     et al.,                              Re: Dkt. No. 83
16
                Defendants.
17

18        Plaintiff James West ("Plaintiff"), proceeding *pro se*, filed a third amended complaint

19   against Defendants Palo Alto Housing Corporation ("PAHC"), PAHC Management and Services

20   Corporation ("PAHC Management"), PAHC Apartments Inc. ("Barker Hotel"), Alma Place

21   Associates LP ("Alma Place"), Candice Gonzalez ("Gonzalez"), Georgina Mascarenhas

22   ("Mascarenhas"), April Fields ("Fields"), James Quinn ("Quinn"), Jocelyn Harrison ("Harrison"),

23   and Evangeline Granadosin ("Granadosin") (collectively, "Defendants").  In his third amended

24   complaint, Plaintiff asserts causes of action arising out of his tenancies at the Barker Hotel and

25   Alma Place, two apartments that provide low income housing.  Before the Court is Defendants'

26   motion to dismiss portions of Plaintiff's third amended complaint.  ECF No. 83 ("Mot").  Having

27                                          1

considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Defendants' motion to dismiss.

## I.  BACKGROUND

### A.  Factual Background

#### 1.  The Parties

Plaintiff states that he is a "disabled African American male" who rented "low income housing units managed by" PAHC from 2008 to 2015. Third Amended Complaint ("TAC") ¶ 4. Specifically, Plaintiff states that he rented a housing unit at the Barker Hotel from December 2008 to July 2011 and another housing unit at Alma Place from July 2011 to April 2015. *Id.*

Plaintiff alleges that PAHC is a "non-profit community development organization" incorporated "as a public benefits corporation" whose purpose is "to develop, acquire, and manage low and moderate-income housing in Palo Alto, California." *Id.* ¶ 5. Plaintiff further alleges that at all times relevant to the instant case, PAHC owned and managed the Barker Hotel, which is an apartment complex that provides low income housing. *Id.* ¶ 9. Relatedly, Plaintiff states that Alma Place is a "California Limited Partnership" that also provides low income housing. *Id.* ¶ 10. According to Plaintiff, PAHC is also the managing agent for Alma Place. *Id.* ¶ 6. Further, Plaintiff alleges that PAHC Management is a "PAHC affiliate that employ[]s the management officers, supervisors, maintenance personnel, site managers, and resident service coordinators" at PAHC and its associated properties. *Id.* ¶ 8.

With regards to the individual defendants, Plaintiff alleges that Defendant Gonzalez is the President and CEO of PAHC, that Defendant Mascarenhas is the Vice President and property director of PAHC, and that Defendant Granadosin is the property supervisor for PAHC. *Id.* ¶¶ 11–13. Further, Plaintiff alleges that Defendant Fields "is a senior manager for [PAHC] at Alma Place," that Defendant Quinn is "a site manager for [PAHC] at [the] Barker Hotel," and that Defendant Harrison "is assistant manager for [PAHC] at Alma Place." *Id.* ¶¶ 14–17.

#### 2.  Plaintiff's Experiences at the Barker Hotel and Alma Place

Plaintiff's third amended complaint asserts many factual allegations regarding his tenancies at the Barker Hotel and Alma Place in support of a variety of causes of action. The Court summarizes the portions of Plaintiff's third amended complaint that are relevant to the instant order.

### a. The Barker Hotel

In November 2008, Plaintiff met with Defendant Quinn because Plaintiff was interested in renting a unit at the Barker Hotel. *Id.* ¶ 19. Defendant Quinn showed Plaintiff several single room occupancy ("SRO") rental units on the second floor. *Id.* Plaintiff "made several inquiries about the quietness and crime in the neighborhood," and Defendant Quinn "informed Plaintiff that there was very little criminal activity [around the Barker Hotel] and only mentioned the occasional noise from a restaurant across the street." *Id.* ¶¶ 20–21. Plaintiff submitted an application for an SRO at the Barker Hotel, and Defendant Quinn "informed Plaintiff sometime in November or December 2008" that "Plaintiff was approved for SRO unit 19." *Id.* ¶ 26. Plaintiff accepted the offer. *Id.*

On December 16, 2008, immediately before moving into the Barker Hotel, Plaintiff met with Defendant Quinn, and Defendant Quinn informed Plaintiff that the lease agreement "was not available for [Plaintiff] to sign because [Quinn's] office printer was not working." *Id.* ¶ 29. Plaintiff asked Defendant Quinn about the contents of the lease agreement, and Defendant Quinn represented that it was a standard rental agreement. *Id.* ¶ 30. Then, Plaintiff Quinn took possession of SRO unit 19. *Id.* ¶ 33.

On December 24, 2008, Plaintiff met again with Defendant Quinn in order for Plaintiff to pay the security deposit and pro-rated rent for December 2008. *Id.* ¶ 35. Defendant Quinn presented to Plaintiff a seven-page lease agreement with three pages of house rules, and "Plaintiff was surprised at the length and complexity of the rental agreement." *Id.* ¶ 36. Plaintiff began reading the lease agreement, but "Defendant Quinn became impatient and began to yell at Plaintiff and insisted that Plaintiff sign the rental agreement." *Id.* ¶ 37. When Plaintiff asked about the Barker Hotel's grievance process, "Defendant Quinn stated that there was no grievance process."

3

*Id.* ¶ 38. Eventually, Defendant Quinn stopped answering Plaintiff's questions, so Plaintiff took the lease agreement to his room to read. *Id.* ¶ 39. Plaintiff called the PAHC office number and told Defendant Granadosin that he had questions about the lease agreement and that Defendant Quinn would not answer his questions. *Id.* Plaintiff also told Defendant Granadosin that Quinn had not "gone over the lease agreement with Plaintiff." *Id.*

Eventually, Plaintiff signed the lease and returned it to Defendant Quinn, who refused to give Plaintiff a signed copy. *Id.* ¶ 42. From then on, the relationship "between Plaintiff and [D]efendant Quinn became increasingly hostile." *Id.* ¶ 44. For example, Plaintiff alleges that Defendant Quinn made false accusations that Plaintiff failed to comply with "the certification process." *Id.* ¶ 46. Further, Plaintiff states that in July 2009, during Plaintiff's first "re-certification meeting," "Defendant Quinn intentionally assault[ed] [Plaintiff] by kicking [Plaintiff] in the leg." *Id.* Plaintiff also alleges that Defendant Quinn "did not display such hostility towards other white tenants." *Id.* ¶ 75.

Plaintiff further alleges that he experienced other forms of discrimination at the hands of Defendant Quinn. Specifically, Plaintiff states that when Plaintiff was initially inquiring into renting a unit at the Barker Hotel, Defendant Quinn only allowed Plaintiff to view SRO units on the second floor of the Barker Hotel, and never mentioned that Plaintiff could get on the wait list for any of the first floor units, which were designed as units for those with disabilities. *Id.* ¶ 75. In contrast, Plaintiff learned from a white male Barker Hotel resident named Neil that when Neil first inquired about renting a unit at the Barker Hotel, Defendant Quinn had informed Neil that a first floor unit would be opening soon. *Id.* Further, Plaintiff alleges that before allowing maintenance workers to enter units rented by women, Defendant Quinn would always give the women advance notice and ask for permission. *Id.* In contrast, Plaintiff alleges that Defendant Quinn never gave Plaintiff advance notice or asked for Plaintiff's permission in similar circumstances. *Id.*

Plaintiff complained about Defendant Quinn's behavior to Quinn's supervisors and PAHC

managers, including Defendants Gonzalez, Granadosin, and Harrison, but Quinn's behavior did not change. *Id.* ¶¶ 75, 83. At a July 17, 2009 meeting with Defendant Mascarenhas, Plaintiff asked Mascarenhas if there was any grievance procedure. *Id.* ¶ 47. Defendant Mascarenhas replied that there was such a procedure, but that she "didn't have a copy available" and "would locate one and get [it] to" Plaintiff. *Id.* By September 20, 2009, Plaintiff still had not received a copy of the grievance procedure, so he emailed Defendant Mascarenhas asking for it. *Id.* Then, on December 1, 2009, Plaintiff emailed Defendant Gonzalez "requesting a hearing or meeting on [his] grievances regarding the Barker Hotel," but Defendant Gonzalez "never wr[o]te[] back." *Id.* ¶ 48. "Plaintiff never received a copy of the Barker Hotel grievance procedure." *Id.* ¶ 47.

During his tenancy at the Barker Hotel, Plaintiff was also affected by the noise level around the Barker Hotel. Specifically, Plaintiff's SRO unit was located above a popular ice cream and yogurt shop at which customers "would engage [in] loud conversation and singing" and block the sidewalk and entry into the Barker Hotel. *Id.* ¶ 54. Further, "[a]nother late night disturbance was the B412 night club located across from the Barker Hotel," which played very loud music and attracted "rowdy" patrons who would drink and fight in public. *Id.* ¶ 56. "Plaintiff made numerous complaints to the city code enforcement departments, [p]olice department, city council, and city [h]uman relations commission for assistance with the loud noise and disturbance cause[d] by the night club." *Id.* ¶ 57. Specifically, Plaintiff complained to the Palo Alto Police Department in July 2009, and also went to a Palo Alto City Council meeting on July 6, 2009 "to complain about the noise from the nightclub and the poor police assistance." *Id.* ¶ 59. Thereafter, "Plaintiff made repeated calls to the Palo Alto Police regarding the noise between 2009 and 2011." *Id.* ¶ 63. When the night club went out of business, "Plaintiff organized a petition drive to request that the night club . . . remain closed." *Id.* ¶ 64.

### b. Transition Between the Barker Hotel and Alma Place

After waiting on the wait list for a unit at Alma Place, Plaintiff eventually moved to Alma Place on July 30, 2011. Prior to the move, on July 20, 2011, Plaintiff "requested an expedited

Case No. 17-CV-00238-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

move arrangement" in order to avoid paying rent on two rental units at the same time, but Defendant Mascarenhas denied Plaintiff's request. *Id.* ¶ 67. Plaintiff informed the manager and assistant manager of Alma Place of this denial, and the manager and assistant manager negotiated a resolution with Defendant Mascarenhas that allowed Plaintiff to move into Alma Place on July 30, 2011 while being liable for rent at the Barker Hotel until August 3, 2011. *Id.* ¶ 68. However, Plaintiff alleges that Defendant Mascarenhas "attempted to rescind the transfer agreement" and "only relented" when someone from "Project Sentinel contacted [Defendant Mascarenhas] per Plaintiff's complaint." *Id.* ¶ 70. Sometime in 2012, while Plaintiff was in a "cooking workshop," Plaintiff learned that "expedited transfers" were typically "granted upon request." *Id.* ¶ 75.

Then, on July 29, 2011, "while Plaintiff was preparing for his move to" Alma Place, "Plaintiff and [D]efendant Mascarenhas got into a heated argument over the terms of the transfer agreement." *Id.* ¶ 70. According to Plaintiff, Defendant Mascarenhas "wanted [Plaintiff] to move out on July 29, 2011," but Plaintiff could not move on July 29, 2011 because the day worker he had hired and the moving van he had rented were not available that day. *Id.* Plaintiff alleges that Defendant Mascarenhas yelled that she wanted Plaintiff to "get out," and that she didn't "want any trouble-making blacks residing in properties" that she managed. *Id.*

### c. Alma Place

Plaintiff took possession of his unit at Alma Place on July 30, 2011. *Id.* ¶ 73. However, Plaintiff alleges that he "continue[d] to experience housing problems . . . until his departure from" Alma Place. *Id.* ¶ 75. As relevant to this order, Plaintiff alleges that he "requested a mediation of [a] rental dispute [with PAHC] . . . through the Palo Alto Mediation program," and that Defendant Mascarenhas was PAHC's representative at the mediation, which ended "unsuccessfully." *Id.* ¶ 85. Plaintiff states that afterwards, on November 25, 2013, Defendant Mascarenhas wrote a letter to Plaintiff instructing him "not to write management regarding housing issues and to move out." *Id.*

Plaintiff also alleges that in 2014, Defendant Harrison "refused to investigate a noise

United States District Court
Northern District of California

complaint Plaintiff made against another white male resident" and "allowed a wom[a]n resident to subject [P]laintiff to racial [] slurs [and] sexual epithets after complaining about the wom[a]n resident['s] loud noises and arguments." *Id.* ¶ 75. Further, Plaintiff states that he "was offered a transfer unit at Alma Place but the offer was withdrawn by [D]efendant Fields [o]n October 28, 2014 when a white male applicant wanted the unit." *Id.*

Moreover, Plaintiff alleges that he filed a "complaint of discrimination with" HUD on October 28, 2014 "against [] [D]efendants Fields, Alma Place Owners, Jocelyn Harrison, Candice Gonzalez, Georgia Mascarenhas based on race[,] color, [and] disability discrimination." *Id.* ¶ 86. Plaintiff states that this HUD complaint was pending until January 15, 2015. *See* Pl. Opp. at 4.

Then, because of "the hostile environment at Alma Place," Plaintiff decided to move out of Alma Place in 2015. TAC ¶ 88. Although an April 10, 2015 move-out date was scheduled, "[d]ue to an illness related to his disability, Plaintiff requested a reasonable accommodation for more time" in March 2015. *Id.* ¶¶ 88, 90. Plaintiff alleges that he "contacted [D]efendants['] agents to start the process of engaging in a reasonable accommodation for more time to move out," and that after waiting for a period of time, "the agents['] attorney Steven Naumchik never engaged Plaintiff in a good faith and timely discussion of a reasonable accommodation" until Plaintiff "engage[d] the assistance of attorney to talk to attorney Naumchik to compel a response." *Id.* ¶ 90. Then, "Plaintiff received a response a few days before his [April 10, 2015] move out date and the reasonable accommodation request was denied." *Id.*

### B. Procedural History

On January 17, 2017, Plaintiff filed his original complaint and an application to proceed in forma pauperis ("IFP"). ECF Nos. 1–2. Then, on February 2, 2017, Plaintiff declined magistrate judge jurisdiction. ECF No. 5. On that same day, Magistrate Judge Nathanael Cousins granted Plaintiff's IFP application and issued a report and recommendation recommending dismissal of Plaintiff's original complaint with leave to amend because the original complaint "provide[d] no facts to support" the claims in the complaint. ECF No. 6 at 2.

On February 9, 2017, the instant case was reassigned to the undersigned judge. ECF No. 8. Then, on April 17, 2017, the Court adopted Judge Cousins' report and recommendation and dismissed Plaintiff's original complaint with leave to amend. ECF No. 11. On May 9, 2017, Plaintiff filed a first amended complaint. ECF No. 15.

On June 26, 2017, the Court issued an order directing the U.S. Marshal for the Northern District of California to serve Plaintiff's first amended complaint upon the defendants. ECF No. 16.

On September 12, 2017, Defendants filed a motion to dismiss Plaintiff's first amended complaint. ECF No. 57. Then, on October 3, 2017, Plaintiff filed a second amended complaint. ECF No. 66.

On October 19, 2017, the parties filed a stipulation allowing Plaintiff to file a third amended complaint ("TAC") by November 1, 2017, and allowing Defendants to respond to the TAC by November 30, 2017. ECF No. 69. On October 24, 2017, the Court granted the parties' stipulation and denied as moot Defendants' motion to dismiss Plaintiff's first amended complaint. ECF No. 73.

On November 1, 2017, Plaintiff filed a TAC. *See* TAC. The TAC asserts twenty-one causes of action. Specifically, the TAC asserts causes of action for: (1) violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; (2) violation of the Rehabilitation Act, 29 U.S.C. § 794; (3) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (4) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955; (5) violation of California Government Code § 11135; (6) violation of 42 U.S.C. §§ 1981–83; (7) violation of 18 U.S.C. §§ 1701–03, 1708; (8) violation of California Penal Code § 530.5; (9) retaliation in violation of 42 U.S.C. § 3617; (10) retaliation in violation of California Government Code § 12955(f); (11) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 & 12133; (12) disability discrimination in violation of the FEHA; (13) disability discrimination in violation of Unruh Civil Rights Act, Cal. Civ. Code § 51; (14)

fraud and concealment; (15) breach of contract; (16) intentional and negligent infliction of emotional distress; (17) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (18) negligence based on "failure to prevent retaliation, train and supervise"; (19) negligence based on "failure to engage in reasonable accommodation discussions"; (20) breach of an implied covenant of good faith and fair dealing; and (21) violation of the Bane Act, Cal. Civ. Code § 52.1

On November 29, 2017, Defendants filed a motion to dismiss portions of Plaintiff's TAC. *See* Mot.  Plaintiff opposed Defendants' motion to dismiss on January 17, 2018, *see* ECF No. 101 ("Pl. Opp."), and Defendants filed a reply on January 24, 2018.  ECF No. 103 ("Reply").

## II.  LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

United States District Court
Northern District of California

beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)

### III. DISCUSSION

In the instant motion, Defendants move to dismiss several portions of Plaintiff's TAC. First, Defendants move to dismiss several state law claims as they pertain to Defendants Gonzalez, Mascarenhas, Granadosin, Fields, Quinn, and Harrison (collectively, the "Individual Defendants"). Mot. at 10–11. Second, Defendants move to dismiss Plaintiff's cause of action for fraud and concealment. *Id.* at 4–6. Third, Defendants move to dismiss all causes of action asserted against

10

Defendants Quinn, Mascarenhas, and Fields. *Id.* at 6–7. Fourth, Defendants move to dismiss all claims asserted pursuant to the FHA and the FEHA against Defendants Gonzalez, Granadosin, and Harrison. *Id.* at 8–10. Fifth and finally, Defendants move to dismiss Plaintiff's cause of action for violation of the UCL based on a violation of the Palo Alto Municipal Code. *Id.* at 7–8. The Court addresses each argument in turn.

**A. Assorted State Law Claims Against the Individual Defendants**

Plaintiff's TAC asserts state law causes of action for, inter alia, (1) breach of contract; (2) breach of an implied covenant of good faith and fair dealing; (3) negligence based on "failure to prevent retaliation, train, and supervise"; (4) negligence based on "failure to engage in reasonable accommodation discussions"; and (5) violation of the UCL. TAC 14–16. Defendants argue that Plaintiff has failed to sufficiently plead these claims against the Individual Defendants. Mot. at 10–11. For the reasons stated below, the Court agrees with Defendants on all of the claims except for Plaintiff's cause of action for violation of the UCL.

First, as to Plaintiff's causes of action for breach of contract and breach of an implied covenant of good faith and fair dealing, according to the TAC, Plaintiff entered into only two contracts: one with Barker Hotel, and one with Alma Place. TAC ¶ 100. Thus, Plaintiff does not allege that he contracted with any of the Individual Defendants. As a result, Plaintiff's TAC fails to state a claim for either breach of contract or breach of an implied covenant of good faith and fair dealing against any of the Individual Defendants.

Second, with regards to Plaintiff's negligence cause of action based on "failure to prevent retaliation, train, and supervise," the Court agrees with Defendants that this cause of action "cannot be asserted against the Individual Defendants" because it "relate[s] to the alleged action or inaction of PAHC Management . . . and not the individual defendants." Mot. at 10–11. According to the TAC, this negligence cause of action is based on the breach of a duty to "hire, train, supervise, and discipline . . . employees." TAC at 15. Under California law, it is clear that if such a duty exists, it belongs to the employer of the employees. *See Prilliman v. United Air Lines*, 53

Cal. App. 4th 935, 955–56 (1997) (concluding that the plaintiff presented triable issues of fact with respect to his negligence cause of action based on United Air Lines's failure to supervise employees and train employees about the plaintiff's rights under the FEHA); *Higgins v. Thrifty Payless, Inc.*, 2002 WL 57403, * 1 (Cal. Ct. App. 2002) (upholding a judgment against a pharmacy for negligence based on the pharmacy's failure "to train adequately or supervise its pharmacists in providing prescriptions to customers"). However, the Court could not find any case that applied California law and recognized, either explicitly or implicitly, that one of the employer's employees could also be held liable for a breach of the employer's duty to train, supervise, and discipline its employees. Thus, the Court concludes that to the extent Plaintiff's negligence cause of action based on "failure to prevent retaliation, train, and supervise" is asserted against any of the Individual Defendants, it fails as a matter of law.

Third, as to Plaintiff's negligence cause of action based on "failure to engage in reasonable accommodation discussions," the Court notes that according to Plaintiff's TAC, this cause of action appears to be based on a breach of a duty to "engage Plaintiff in good faith reasonable accommodation discussions" regarding his move out of Alma Place. TAC ¶¶ 88, 90, 110. Even assuming that any of the Individual Defendants could be held liable for a breach of such a duty, the Court agrees with Defendants that Plaintiff has failed to allege facts that plausibly suggest that any of the Individual Defendants was involved in the failure "to engage in reasonable accommodation discussions." *Id.* at 16. Plaintiffs' TAC asserts only that Plaintiff "contacted defendants['] agents to start the process of engaging in a reasonable accommodation for more time to move out" of Alma Place, that after a period of waiting, "the agents' attorney Steven Naumchik never engaged Plaintiff in a good faith and timely discussion of a reasonable accommodation," and that Plaintiff "received a response a few days before his move out date and the reasonable accommodation request was denied" after Plaintiff "engage[d] the assistance of attorney to talk to attorney Naumchik to compel a response." *Id.* ¶ 90. None of these allegations even mention any of the Individual Defendants, let alone present enough facts to implicate any of the Individual

12

1    Defendants in the alleged failure to engage Plaintiff in reasonable accommodation discussions.  As

2    a result, the Court concludes that to the extent Plaintiff's negligence cause of action based on

3    "failure to engage in reasonable accommodation discussions" is asserted against any of the

4    Individual Defendants, it fails as a matter of law.

5         Finally, with regards to Plaintiff's cause of action under the UCL, the Court disagrees with

6    Defendants' argument that this claim "cannot be asserted against the Individual Defendants."

7    Mot. at 10.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal.

8    Bus. & Prof. Code § 17200, and Defendants offer no authority to support the proposition that

9    individuals cannot be held liable for engaging in "unlawful, unfair or fraudulent" business

10   practices.  Indeed, California law indicates that at least in some circumstances, individuals can be

11   held liable for violations of the UCL.  *See O'Connor v. Uber Techs., Inc.*, 2014 WL 6354534, * 18

12   (N.D. Cal. Dec. 5, 2017) (stating that "an owner or officer of a corporation may be liable

13   individually under the UCL if he or she actively and directly participates in the unfair business

14   practice" (internal quotation omitted)).

15        Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's UCL claim

16   against the Individual Defendants, but GRANTS Defendants' motion to dismiss Plaintiff's causes

17   of action for breach of contract, breach of an implied covenant of good faith and fair dealing,

18   negligence based on "failure to prevent retaliation, train, and supervise," and negligence based on

19   "failure to engage in reasonable accommodation discussions," to the extent those causes of action

20   are asserted against the Individual Defendants.  The Court provides leave to amend because

21   Plaintiff may be able to allege sufficient facts to assert these causes of action against the Individual

22   Defendants.  *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to

23   amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

24   other facts" (internal quotation marks omitted)).

25   **B. Fraud and Concealment Claim**

26        According to Plaintiff's TAC, Plaintiff's cause of action for "Fraud & Concealment"

27

28
     Case No. 17-CV-00238-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH
     LEAVE TO AMEND

appears to be based on two theories. First, Plaintiff appears to assert that "Defendant Quinn's statement that there was little criminal activity" around the Barker Hotel in November 2008—when Plaintiff visited the Barker Hotel and was contemplating renting a Barker Hotel unit—was false because "Plaintiff suffer[ed] during his tenancy at the Barker Hotel due to the noise by the nightclub across the street and the gelato ice cream shop below his [Barker Hotel] unit." TAC ¶ 93. Second, Plaintiff asserts that "Defendant Quinn's statement that [there] was no grievance process [at the Barker Hotel] . . . was also false," and that Defendants Quinn, Mascarenhas, and Gonzalez improperly failed to disclose the grievance procedure to Plaintiff even after Defendant Mascarenhas told Plaintiff on July 17, 2009 that such a grievance procedure existed and that Mascarenhas would send a copy of it to Plaintiff. *Id.* ¶¶ 47, 94.

Defendants argue that Plaintiff's cause of action for fraud and concealment should be dismissed because it is time-barred by the applicable statute of limitations. Mot. at 4–6. For the reasons stated below, the Court agrees with Defendants.

Under California law, "[a]n action for relief on the ground of fraud or mistake" must be brought within three years after "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d). As to Plaintiff's first theory of fraud and concealment, according to Plaintiff's TAC, Plaintiff discovered "the noise by the nightclub across the street and the gelato ice cream shop below his [Barker Hotel] unit"—which purportedly made Defendant Quinn's representation that there was "little criminal activity" around the Barker Hotel false—by July 2009 at the very latest. TAC ¶¶ 59, 93. This is because Plaintiff alleges that Plaintiff complained about the noise to both the Palo Alto City Counsel and the Palo Alto Police Department in July 2009. *Id.* ¶ 59. Further, as to Plaintiff's second theory of concealment, Plaintiff learned of the existence of a Barker Hotel grievance procedure on July 17, 2009, because that is the date on which Defendant Mascarenhas told Plaintiff that such a grievance procedure existed. *Id.* ¶ 47. Thus, for both of Plaintiff's fraud and concealment theories, Plaintiff learned "the facts constituting the fraud or mistake" in July 2009. Cal. Civ. Proc. Code § 338(d).

14

However, Plaintiff filed the instant action on January 17, 2017—well outside of the three-year limitations period. *See* ECF No. 1.

In his opposition to Defendants' motion to dismiss, Plaintiff does not dispute that he knew the factual basis for his fraud and concealment claim in July 2009. Instead, Plaintiff argues that he is "entitled to both equitable estoppel and delayed discovery," and that "[b]ased on both theories of equitable estoppel and delayed discovery[,] Plaintiff['s] claim for fraud and concealment did not accru[e] [un]til March 2017." Pl. Opp. at 3–4.

The Court is not persuaded by Plaintiff's argument because Plaintiff's TAC is devoid of facts that plausibly suggest that either the doctrine of equitable estoppel or the delayed discovery rule should be applied to Plaintiff's fraud and concealment claim. First, as to the doctrine of equitable estoppel, equitable estoppel "addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383 (2003) (internal quotation marks and citations omitted). In other words, a defendant can be equitably estopped from asserting a statute of limitations defense if the plaintiff's "delay in commencing action is induced by the conduct of the defendant." *Atwater Elementary Sch. Dist. v. Cal. Dep't of Gen. Servs.*, 41 Cal. 4th 227, 232–33 (2007) (internal quotation marks and citations omitted). In the instant case, Plaintiff's TAC provides no facts that even remotely suggest that Plaintiff was induced by any of the Defendants to delay in filing the instant action.

Second, "under the delayed discovery rule, a cause of action will not accrue until the plaintiff discovers or should have discovered, through the exercise of reasonable diligence, all the facts essential to the cause of action." *Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1246 (1998). As explained above, Plaintiff's TAC demonstrates that Plaintiff's fraud and concealment cause of action accrued in July 2009 because Plaintiff discovered "all the facts essential to" that cause of action in July 2009. *Id.* Specifically, as to Plaintiff's first theory

of fraud and concealment, Plaintiff's allegations that he complained about the noise level around the Barker Hotel to both the Palo Alto City Council and the Palo Alto Police Department in July 2009 demonstrate that Plaintiff was well aware that Defendant Quinn's representation about the noise level around the Barker Hotel was false by July 2009. *See* TAC ¶ 59. Further, as to Plaintiff's second theory of fraud and concealment, Plaintiff's TAC indicates that Plaintiff learned of the existence of a Barker Hotel grievance procedure by at the latest July 17, 2009, when Defendant Mascarenhas told Plaintiff that such a procedure existed and that she would send Plaintiff a copy. *Id.* ¶ 47.

Plaintiff's argument that he "was not able to under[stand] the nature of the full injury until . . . after talking to a Santa Clara County Housing specialist" in March 2017, Pl. Opp. at 3–4, is unavailing. Under California law, "[i]gnorance of the legal significance of known facts . . . will not delay the running of the statute." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). Instead, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Id.* Thus, Plaintiff's fraud and concealment cause of action accrued when Plaintiff learned enough facts to suspect wrongdoing, which, as explained above, was in July 2009.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's cause of action for fraud and concealment. However, the Court affords leave to amend because Plaintiff may be able to allege sufficient facts to support a cause of action for fraud and concealment. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### C. Claims Against Defendants Quinn, Mascarenhas, and Fields

Defendants argue that all of the remaining claims in the TAC against Defendants Quinn, Mascarenhas, and Fields should be dismissed as time-barred. Mot. at 6–7. The Court first addresses Plaintiff's remaining claims against Defendant Quinn. Next, the Court addresses

16

Case No. 17-CV-00238-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

Plaintiff's remaining claims against Defendant Mascarenhas. Finally, the Court addresses Plaintiff's remaining claims against Defendant Fields.

### 1. Claims Against Defendant Quinn

In some parts of Plaintiff's TAC, Plaintiff does not clearly identify the specific actions that underlie each of Plaintiff's causes of action. For example, one section of Plaintiff's TAC lists seven different statutes, but identifies neither the specific Defendants that are being sued under each statute nor the specific actions that allegedly violated each statute. *See* TAC at 9–11. However, construing Plaintiff's TAC broadly and in Plaintiff's favor, the Court surmises that all of the remaining causes of action in the TAC against Defendant Quinn are as follows: (1) racial discrimination in violation of the FHA, the FEHA, and 42 U.S.C. §§ 1981–83, based on Quinn's failure to tell Plaintiff about the waitlist for the first floor units at Barker Hotel and Quinn's hostile treatment of Plaintiff (and corresponding lack of hostility towards white tenants), TAC ¶ 75; (2) sex discrimination in violation of the FHA, the FEHA, and 42 U.S.C. § 1983, based on Quinn's failure to ask Plaintiff permission or give Plaintiff notice before allowing maintenance workers to enter Plaintiff's room, even though Quinn would always ask female tenants before allowing maintenance workers to enter their rooms, *id.*; (3) intentional and negligent infliction of emotional distress, *id.* ¶ 103; (4) engaging in unfair business practices in violation of the UCL, *id.* ¶¶ 105, 108; and (5) violation of the Bane Act. *Id.* ¶ 113.

The limitations periods for causes of action asserted pursuant to the statutes mentioned in the paragraph above are as follows: (1) two years for a claim under the FHA, *see* 42 U.S.C. § 3613(a)(1)(A); (2) two years for a claim under the FEHA, *see* Cal. Gov't Code § 12989.1; (3) two years for a claim under 42 U.S.C. §§ 1981–83, *see McKinney v. Boyd Gaming Corp.*, 12 F. App'x 599, 601 (9th Cir. 2001) ("Civil rights claims arising under 42 U.S.C. §§ 1981–83 are subject to states' statute of limitations for personal injury claims."); Cal. Civ. Proc. Code § 335.1 (stating that the limitations period for "[a]n action for assault, battery, or for the death of, an individual caused by the wrongful act or neglect of another" is two years); (4) two years for a claim based on

intentional or negligent infliction of emotional distress, *see* Cal. Civ. Proc. Code § 335.1; (5) three years for a claim under the UCL, *see* Cal. Civ. Proc. Code § 338(a) (stating that the limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture" is three years); and (6) two or three years, depending on the underlying violation of rights, for a claim under the Bane Act. *See Wilson v. City of Oakland*, 2012 WL 669527, *3 n.6 (N.D. Cal. Feb. 29, 2012) ("For liability arising out of common law neglect or personal injury, a two-year statute of limitations applies, but for statutory actions, a three-year limitation applies.").

Thus, all of the remaining claims in Plaintiff's TAC against Defendant Quinn are subject to limitations periods of either two or three years. Further, all of these claims are based on actions taken by Defendant Quinn *while Plaintiff was still living in the Barker Hotel* because Defendant Quinn was the site manager for PAHC at the Barker Hotel. TAC ¶ 15. Relatedly, Plaintiff discovered all the facts suggesting that Defendant Quinn discriminated against Plaintiff on the basis of race and sex while Plaintiff was still a tenant of the Barker Hotel. *See id.* ¶ 75 (stating that Plaintiff became aware of potentially favorable treatment to white tenants regarding the first floor units from a white Barker Hotel tenant while Plaintiff was still living in the Barker Hotel). Thus, because Plaintiff moved out of the Barker Hotel in August 2011, *see id.* ¶ 66, all of Plaintiff's remaining claims against Defendant Quinn accrued, at the very latest, in August 2011. However, Plaintiff brought the instant action on January 17, 2017, which is well outside of the applicable limitations periods for the remaining claims against Defendant Quinn.

The Court also notes that Plaintiff does not oppose Defendants' motion to dismiss his remaining claims against Defendant Quinn as time-barred. *See* Pl. Opp. at 4–5 (arguing that Plaintiff's FHA and FEHA claims against Defendants Mascarenhas, Granadosin, Fields, Harrison, and Gonzalez are still valid, but failing to mention any claims against Defendant Quinn). Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's causes of action for violation of the FHA, violation of the FEHA, violation of 42 U.S.C. §§ 1981–83, intentional and negligent infliction of emotional distress, violation of the UCL, and violation of the Bane Act

Case No. 17-CV-00238-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

against Defendant Quinn. The Court affords leave to amend because Plaintiff may be able to allege sufficient facts to state one of these remaining claims against Defendant Quinn. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 2. Claims Against Defendant Mascarenhas

Once again construing Plaintiff's TAC broadly and in Plaintiff's favor, the Court deduces that all of the remaining causes of action in the TAC against Defendant Mascarenhas are as follows: (1) racial discrimination in violation of the FHA, the FEHA, and 42 U.S.C. §§ 1981–83, based on Mascarenhas's statement to Plaintiff in July 2011 that Mascarenhas "wanted no trouble-making black tenants residing in properties she managed" and that she "wanted Plaintiff out," as well as Mascarenhas's July 2011 denial of Plaintiff's request for an expedited move-out of Barker Hotel—which provoked Plaintiff's suspicion when he learned "sometime in 2012" that "expedited transfers were granted upon request," TAC ¶ 75; (2) retaliation in violation of the FHA and the FEHA based on Mascarenhas's November 25, 2013 letter to Plaintiff "informing Plaintiff not to write management regarding housing issues and to move out" after Plaintiff and PAHC participated in mediation of a rental dispute, *id.* ¶ 85; (3) intentional and negligent infliction of emotional distress, *id.* ¶ 103; (4) violation of the UCL, *id.* ¶ 108; and (5) violation of the Bane Act. *Id.* ¶ 113.

Thus, as with the remaining claims against Defendant Quinn, all of Plaintiff's remaining claims against Defendant Mascarenhas are subject to limitations periods of either two or three years. However, as noted above, all of Plaintiff's remaining claims against Defendant Mascarenhas accrued between July 2011 and November 25, 2013. Thus, because Plaintiff filed the instant action on January 17, 2017—more than three years after November 25, 2013—the remaining claims against Defendant Mascarenhas are all time-barred.

In Plaintiff's opposition, Plaintiff opposes only the dismissal of Plaintiff's FHA and FEHA

United States District Court
Northern District of California

claims against Defendant Mascarenhas. *See* Pl. Opp. at 4–5. As to Plaintiff's FHA claim, Plaintiff argues that the statute of limitations was tolled from when Plaintiff filed a fair housing complaint with HUD against Defendants Fields, Harrison, Gonzalez, Mascarenhas, and the owners of Alma Place on October 28, 2014 until "the conclusion of the HUD investigation which was January 15, 2015." Pl. Opp. at 4; *see* TAC ¶ 86. Plaintiff is correct that a pending HUD complaint tolls the limitations period on a claim if the HUD complaint is based on the same discriminatory conduct as the claim. *See* 42 U.S.C. § 3613(a)(1)(B) ("The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice."). However, even assuming Plaintiff's HUD complaint against Defendant Mascarenhas was based on the same discriminatory conduct as Plaintiff's FHA claims against Defendant Mascarenhas—which Plaintiff does not allege—Plaintiff's FHA claims against Defendant Mascarenhas would still be barred by the two-year statute of limitations because the tolling period was only "about 79 days" long, Pl. Opp. at 4, while Plaintiff brought the instant action at least three years after Plaintiff's FHA claims against Defendant Mascarenhas accrued.

Plaintiff further opposes dismissal of Plaintiff's FHA and FEHA claims against Defendant Mascarenhas by insisting that "Plaintiff alleges that the violations of discrimination by" Defendant Mascarenhas "continued well after the HUD investigation only ending on April 10, 2015[,] when Plaintiff left Alma Place." Pl. Opp. at 4. While Plaintiff is correct that Plaintiff's TAC alleges other instances of housing discrimination and retaliation against Plaintiff that occurred between 2013 to 2015, Plaintiff's TAC is devoid of any facts that plausibly suggest that Defendant Mascarenhas actively "participate[d] in, authorize[d], or ratif[ied] the commission of [those] . . . fair housing tort[s]," as is required to hold Defendant Mascarenhas individually liable for those instances of alleged discrimination under the FHA and the FEHA. *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227 (W.D. Wash. 2012) (citing *Smith v. Stechel*, 510

20

F.2d 1162, 1163 (9th Cir. 1975)).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's causes of action for violation of the FHA, violation of the FEHA, violation of 42 U.S.C. §§ 1981–83, intentional and negligent infliction of emotional distress, violation of the UCL, and violation of the Bane Act against Defendant Mascarenhas. The Court affords leave to amend because Plaintiff may be able to allege sufficient facts to state one of these remaining claims against Defendant Mascarenhas. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 3. Claims Against Defendant Fields

Based on Plaintiff's TAC, the Court surmises that all of the remaining claims against Defendant Fields are as follows: (1) racial discrimination in violation of the FHA, the FEHA, and 42 U.S.C. §§ 1981–83, based on Fields's alleged withdrawal of a transfer unit offer on October 28, 2014 "when a white male applicant wanted the unit," TAC ¶ 75; (2) intentional and negligent infliction of emotional distress, *id.* ¶ 103; (3) violation of the UCL, *id.* ¶ 108; and (4) violation of the Bane Act. *Id.* ¶ 113. Further, all of Plaintiff's remaining claims against Defendant Fields appear to have accrued on October 28, 2014, because they all appear to be based on Fields's October 28, 2014 withdrawal of the transfer unit offer.

Plaintiff's racial discrimination and intentional and negligent infliction of emotional distress claims against Defendant Fields are subject to two-year limitations periods, while Plaintiff's UCL and Bane Act claims against Defendant Fields are subject to three-year limitations periods. As a result, Plaintiff's racial discrimination claim (pursuant to the FHA, the FEHA, and 42 U.S.C. § 1981–83) and Plaintiff's intentional and negligent infliction of emotional distress claim are both time-barred. Further, Plaintiff's Bane Act claim against Defendant Fields is also time-barred because Plaintiff did not assert a Bane Act claim against any of the Defendants until he filed his TAC on November 1, 2017—more than three years after his Bane Act claim accrued.

21

However, Plaintiff's UCL claim against Defendant Fields is not time-barred. This is because Plaintiff asserted his UCL claim against Defendant Fields in the first amended complaint, *see* ECF No. 14, which was filed within three years of October 28, 2014.

In Plaintiff's opposition, Plaintiff opposes the dismissal of Plaintiff's FHA and FEHA claims against Defendant Fields. *See* Pl. Opp. at 4–5. As to Plaintiff's FHA claim, Plaintiff argues that the statute of limitations was tolled from when Plaintiff filed a fair housing complaint against Defendants Fields, Harrison, Gonzalez, Mascarenhas, and the owners of Alma Place on October 28, 2014 until "the conclusion of the HUD investigation which was January 15, 2015." Pl. Opp. at 4; *see* TAC ¶ 86. However, as discussed above, even assuming Plaintiff's HUD complaint against Defendant Fields was based on the same discriminatory conduct as Plaintiff's FHA claim against Defendant Fields in Plaintiff's TAC—which Plaintiff does not allege— Plaintiff's FHA claims against Defendant Fields would still be barred by the two-year statute of limitations. This is because the two-year statute of limitations was tolled only from October 28, 2014 to January 15, 2015, and then ran from January 16, 2015 to January 16, 2017. Plaintiff filed his original complaint on January 17, 2017. *See* ECF No. 1. Further, Plaintiff's original complaint did not mention Defendant Fields's October 28, 2014 withdrawal of the transfer unit offer from Plaintiff—indeed, Plaintiff did not assert that allegation until Plaintiff filed his first amended complaint on May 9, 2017. *See* ECF No. 14 at 16. As a result, even accounting for tolling, Plaintiff's FHA claim against Defendant Fields is time-barred.

Like with Plaintiff's FHA and FEHA claims against Defendant Mascarenhas, Plaintiff opposes dismissal of his FHA and FEHA claims against Defendant Fields by arguing that "the violations of discrimination by" Defendant Fields "continued well after the HUD investigation only ending on April 10, 2015[,] when Plaintiff left Alma Place." Pl. Opp. at 4. However, while Plaintiff's TAC does allege other instances of housing discrimination and retaliation against Plaintiff from 2013 to 2015, Plaintiff's TAC does not contain facts that plausibly suggest that Defendant Fields actively "participate[d] in, authorize[d], or ratif[ied] the commission of [those] . .

. fair housing tort[s]." *Fielder*, 914 F. Supp. 2d at 1227. As a result, Plaintiff's TAC does not allege sufficient facts to hold Defendant Mascarenhas individually liable for those instances of alleged discrimination under the FHA and the FEHA.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's UCL claim against Defendant Fields, but GRANTS Defendants' motion to dismiss Plaintiff's causes of action for violation of the FHA, violation of the FEHA, violation of 42 U.S.C. §§ 1981–83, intentional and negligent infliction of emotional distress, and violation of the Bane Act against Defendant Fields. The Court affords leave to amend because Plaintiff may be able to allege sufficient facts to state one of these remaining claims against Defendant Fields. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### D. FHA and FEHA Claims Against Defendants Gonzalez, Granadosin, and Harrison

Defendants argue that all of the FHA and FEHA claims in the TAC against Defendants Gonzalez, Granadosin, and Harrison should be dismissed as time-barred and for failure to state a claim. Mot. at 8–10, 11. For the reasons stated below, the Court agrees that all FHA and FEHA claims that Plaintiff's TAC asserts against Defendants Gonzalez, Granadosin, and Harrison are time-barred. Thus, the Court need not address Defendants' alternative argument that Plaintiff has failed to state FHA and FEHA claims against Defendants Gonzalez, Granadosin, and Harrison. The Court first addresses Plaintiff's FHA and FEHA claims against Defendant Gonzalez. Next, the Court addresses Plaintiff's FHA and FEHA claims against Defendant Granadosin. Finally, the Court addresses Plaintiff's FHA and FEHA claims against Defendant Harrison.

#### 1. FHA and FEHA Claims Against Defendant Gonzalez

As an initial matter, it is unclear whether Plaintiff's TAC asserts any FHA or FEHA claim at all against Defendant Gonzalez. The only allegations in the TAC that mention Defendant Gonzalez are as follows: (1) "Plaintiff complained about defendant[] Quinn's conduct during the

signing of the lease agreement in December 24, 2008 and his hostile and harassment behavior toward Plaintiff during [Plaintiff's] tenancy [at the Barker Hotel] to . . . Gonzalez," but Defendant Quinn's behavior did not change, TAC ¶¶ 75, 83; and (2) on December 1, 2009, Plaintiff emailed Defendant Gonzalez "requesting a hearing or meeting on [Plaintiff's] grievances regarding the Barker Hotel," but Defendant Gonzalez "never [wrote] back." *Id.* ¶ 48.

Even assuming (without deciding) that Plaintiff can state a claim under either the FHA or the FEHA against Defendant Gonzalez based on these allegations, Plaintiff's claim would be time-barred by the two-year limitations periods in both the FHA and the FEHA. *See* 42 U.S.C. § 3613(a)(1)(A); Cal. Gov't Code § 12989.1. As discussed above, based on the only allegations in the TAC that mention Defendant Gonzalez, any FHA or FEHA claim that Plaintiff asserts against Defendant Gonzalez must be premised on events that occurred during Plaintiff's tenancy at the Barker Hotel, which means Plaintiff's claim accrued by August 2011 (when Plaintiff moved out of the Barker Hotel). *See* TAC ¶ 66. However, Plaintiff brought the instant action on January 17, 2017—more than five years after August 2011, and therefore well outside of the two-year limitations periods provided by the FHA and the FEHA. Thus, any FHA or FEHA claims asserted by Plaintiff against Defendant Gonzalez are time-barred.

Plaintiff argues that his claims under the FHA and FEHA against Defendant Gonzalez are not time-barred because "violations of discrimination by" Defendant Gonzalez "continued" until after "April 10, 2015[,] when Plaintiff left" Alma Place. Pl. Opp. at 4. However, while Plaintiff's TAC alleges that Plaintiff suffered from other instances of housing discrimination and retaliation after August 2011, Plaintiff's TAC does not allege facts that plausibly suggest that Defendant Gonzalez actively participated in, authorized, or ratified any of those instances. *See Fielder*, 914 F. Supp. 2d. at 1227. As a result, Plaintiff's TAC does not allege sufficient facts to hold Defendant Gonzalez individually liable for those instances of alleged discrimination under the FHA and the FEHA.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's causes of

24

action for violation of the FHA and the FEHA against Defendant Gonzalez. The Court affords leave to amend because Plaintiff may be able to allege sufficient facts to state a claim under either the FHA or the FEHA against Defendant Gonzalez. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 2. FHA and FEHA Claims Against Defendant Granadosin

Similarly, it is unclear whether Plaintiff's TAC asserts any FHA or FEHA claim at all against Defendant Granadosin. The only allegations in the TAC that mention Defendant Granadosin are as follows: (1) "Plaintiff complained about defendant[] Quinn's conduct during the signing of the lease agreement in December 24, 2008 and his hostile and harassment behavior toward Plaintiff during [Plaintiff's] tenancy [at the Barker Hotel] to . . . Granadosin," but Defendant Quinn's behavior did not change, TAC ¶¶ 75, 83; and (2) on December 24, 2008, Plaintiff called the main PAHC office number and told Defendant Granadosin that Defendant Quinn would not answer Plaintiff's questions about the lease agreement with the Barker Hotel. *Id.* ¶¶ 39–41.

As with Plaintiff's FHA and FEHA claims against Defendant Granadosin, even assuming (without deciding) that Plaintiff can state a claim under either the FHA or the FEHA against Defendant Granadosin, Plaintiff's claim is barred by the two-year limitations periods in both the FHA and the FEHA. *See* 42 U.S.C. § 3613(a)(1)(A); Cal. Gov't Code § 12989.1. Like with Plaintiff's FHA and FEHA claims against Defendant Gonzalez, based on the only allegations in the TAC that mention Defendant Granadosin, any FHA or FEHA claim that Plaintiff asserts against Defendant Granadosin must be premised on events that occurred while Plaintiff lived at the Barker Hotel, which means Plaintiff's claim accrued by August 2011 (when Plaintiff moved out of the Barker Hotel). *See* TAC ¶ 66. However, Plaintiff brought the instant action well outside of the two-year limitations periods provided by the FHA and the FEHA. Thus, any FHA or FEHA claims asserted by Plaintiff against Defendant Granadosin are time-barred.

United States District Court
Northern District of California

Further, while Plaintiff argues once again that his FHA and FEHA claims against Defendant Granadosin are not time-barred because "violations of discrimination by" Defendant Granadosin "continued" until "April 10, 2015[,] when Plaintiff left" Alma Place, Plaintiff's TAC contains no facts to plausibly suggest that Defendant Granadosin actively participated in, authorized, or ratified any discriminatory or retaliatory conduct against Plaintiff after August 2011. *See Fielder*, 914 F. Supp. 2d at 1227. As a result, Plaintiff's TAC does not allege sufficient facts to hold Defendant Granadosin individually liable for those later instances of alleged discrimination under the FHA and the FEHA.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's causes of action for violation of the FHA and the FEHA against Defendant Granadosin. The Court affords leave to amend because Plaintiff may be able to allege sufficient facts to state a claim under either the FHA or the FEHA against Defendant Granadosin. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 3. FHA and FEHA Claims Against Defendant Harrison

Finally, the only allegations in the TAC that could potentially support FHA and FEHA claims against Defendant Harrison are as follows: (1) while Plaintiff lived at the Barker Hotel, Plaintiff complained to PAHC managers—including Defendant Harrison—about Defendant Quinn's conduct and hostility towards Plaintiff, but Quinn's behavior did not change, TAC ¶ 75; and (2) in 2014, Defendant Harrison "refused to investigate a noise complaint Plaintiff made against another white male resident" and "allowed a wom[a]n resident to subject plaintiff to racial [] slurs [and] sexual epithets after complaining about the wom[a]n resident['s] loud noises and arguments." *Id.*

As explained above, any FHA or FEHA claim based on a failure to correct Defendant Quinn's conduct accrued by August 2011 at the latest and is therefore time-barred. Thus, even assuming (without deciding) that Plaintiff could state an FHA or FEHA claim against Defendant

Case No. 17-CV-00238-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

Harrison based on Defendant Harrison's failure to correct Defendant Quinn's behavior, that claim is barred by the two-year limitations periods in the FHA and the FEHA.

Further, again assuming without deciding that Plaintiff can state an FHA or FEHA claim against Defendant Harrison based on Harrison's alleged refusal to investigate Plaintiff's noise complaint and acquiescence to another resident's racial and sexual insults towards Plaintiff, Plaintiff alleges that those events occurred in 2014. *See* TAC ¶ 75. However, Plaintiff did not file his original complaint until January 17, 2017, and he did not assert these allegations until May 9, 2017, when Plaintiff filed his amended complaint. *See* ECF No. 14 at 16. Thus, even if Plaintiff's FHA claim against Defendant Harrison was briefly tolled between October 28, 2014 and January 15, 2015 (when Plaintiff's HUD complaint was pending), Plaintiff's FHA and FEHA claim based on Defendant Harrison's 2014 conduct is still barred by the two-year limitations periods in the FHA and the FEHA.

Finally, although Plaintiff argues that "violations of discrimination by" Defendant Harrison "continued" until "April 10, 2015[,] when Plaintiff left" Alma Place, as discussed above, the only factual allegations in the TAC that could support FHA and FEHA claims against Defendant Harrison are about conduct that occurred in 2011 and 2014. In other words, Plaintiff's TAC alleges no facts that plausibly suggest that Defendant Harrison actively participated in, authorized, or ratified any discriminatory or retaliatory conduct against Plaintiff after 2014. *See Fielder*, 914 F. Supp. 2d at 1227. As a result, Plaintiff's TAC does not allege sufficient facts to hold Defendant Harrison individually liable for those later instances of alleged discrimination under the FHA and the FEHA.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's causes of action for violation of the FHA and the FEHA against Defendant Harrison. The Court affords leave to amend because Plaintiff may be able to allege sufficient facts to state a claim under either the FHA or the FEHA against Defendant Harrison. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not

Case No. 17-CV-00238-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

**E. UCL Claim Based on Violation of Palo Alto Municipal Code**

Plaintiff's TAC asserts a cause of action for violation of the UCL based on Defendants' alleged violation of Palo Alto Municipal Code § 9.73, which is Palo Alto's "city policy against arbitrary discrimination." *See* TAC ¶ 105. Defendants argue that this cause of action should be dismissed because Palo Alto Municipal Code § 9.73 does not provide a private right of action. Mot. at 7–8.

The Court is not persuaded by Defendants' argument. By basing his UCL claim on Defendants' alleged violation of Palo Alto Municipal Code § 9.73, Plaintiff is clearly asserting his UCL claim under the "unlawful" prong of the UCL. *See In re Actimmune Mktg. Litig.*, 2010 WL 3463491, *6 (N.D. Cal. Sept. 1, 2010) ("In the context of an unlawful-prong claim, a plaintiff must establish that a defendant engaged in unlawful conduct, i.e., violated a federal, state or municipal statute, ordinance or regulation."). Thus, even though Palo Alto Municipal Code § 9.73 does not provide a private right of action, it is well-established that "[c]onduct that is prohibited by a statute may be actionable under the UCL['s 'unlawful' prong] even if the predicate statute does not provide a private right of action." *Banga v. Allstate Ins. Co.*, 2010 WL 1267841, *2 (E.D. Cal. 2010); *see Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*¸ 17 Cal. 4th 553, 566 (1998) (rejecting the argument that "a private UCL claim is barred whenever the predicate statute fails to afford a private right of action"). As a result, the mere fact that there is no private right of action to enforce Palo Alto Municipal Code § 9.73 does not preclude Plaintiff from bringing a UCL claim predicated on § 9.73.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's UCL claim premised on an alleged violation of Palo Alto Municipal Code § 9.73.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss. In particular:

28

United States District Court
Northern District of California

1. The Individual Defendants' motion to dismiss Plaintiff's causes of action for breach of contract, breach of an implied covenant of good faith and fair dealing, negligence based on "failure to prevent retaliation, train, and supervise," and negligence based on "failure to engage in reasonable accommodation discussions" is GRANTED with leave to amend.

2. The Individual Defendants' motion to dismiss Plaintiff's cause of action for violation of the UCL is DENIED.

3. Defendants' motion to dismiss Plaintiff's cause of action for fraud and concealment is GRANTED with leave to amend.

4. Defendant Quinn's motion to Plaintiff's causes of action for violation of the FHA, violation of the FEHA, violation of 42 U.S.C. §§ 1981-83, intentional and negligent infliction of emotional distress, violation of the UCL, and violation of the Bane Act is GRANTED with leave to amend.

5. Defendant Mascarenhas's motion to dismiss Plaintiff's causes of action for violation of the FHA, violation of the FEHA, violation of 42 U.S.C. §§ 1981–83, intentional and negligent infliction of emotional distress, violation of the UCL, and violation of the Bane Act is GRANTED with leave to amend.

6. Defendant Fields's motion to dismiss Plaintiff's UCL claim is DENIED.

7. Defendant Fields's motion to dismiss Plaintiff's causes of action for violation of the FHA, violation of the FEHA, violation of 42 U.S.C. §§ 1981–83, intentional and negligent infliction of emotional distress, and violation of the Bane Act is GRANTED with leave to amend.

8. Defendant Gonzalez's motion to dismiss Plaintiff's causes of action for violation of the FHA and violation of the FEHA is GRANTED with leave to amend.

9. Defendant Granadosin's motion to dismiss Plaintiff's causes of action for violation of the FHA and violation of the FEHA is GRANTED with leave to amend.

1    10. Defendant Harrison's motion to dismiss Plaintiff's causes of action for violation of the

2        FHA and violation of the FEHA is GRANTED with leave to amend.

3    11. Defendants' motion to dismiss Plaintiff's cause of action for violation of the UCL

4        based on violation of Palo Alto Municipal Code § 9.73 is DENIED.

5        Should Plaintiff elect to file an amended complaint curing the deficiencies identified

6    herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day

7    deadline or failure to cure the deficiencies identified herein will result in a dismissal with

8    prejudice of the deficient claims or theories. Plaintiffs may not add new causes of actions or

9    parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil

10   Procedure 15.

11

12   **IT IS SO ORDERED.**

13   Dated: March 7, 2018

14   _Lucy H. Koh_
                                              _____
15                                            LUCY H. KOH
                                              United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27                                            30

28   Case No. 17-CV-00238-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH
     LEAVE TO AMEND

United States District Court
Northern District of California