UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JAMES WEST,

              Plaintiff,

      v.

PALO ALTO HOUSING CORPORATION, et al.,

              Defendants.

Case No. 17-CV-00238-LHK

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 180, 202, 203

      Plaintiff James West ("Plaintiff"), proceeding pro se, brings suit against Defendants Palo Alto Housing Corporation ("PAHC"), PAHC Management and Services Corporation ("PAHC Management"), PAHC Apartments Inc. ("Barker Hotel"), Alma Place Associates LP ("Alma Place"), Candice Gonzalez, Georgina Mascarenhas, April Fields, James Quinn, Jocelyn Harrison, and Evangeline Granadosin (collectively, "Defendants"). Plaintiff's causes of action arise from his tenancies at the Barker Hotel and Alma Place, two apartments that provide low-income housing. Before the Court is Defendants' motion for summary judgment. Plaintiff filed a late, two-page opposition to Defendants' motion that cites no evidence. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' motion for summary judgment.

1

## I.  BACKGROUND

### A.  Factual Background

Plaintiff is an African-American male who resided at the Barker Hotel between December 2008 and July 2011 and at Alma Place between July 2011 and April 2015.  ECF No. 77 ("TAC") at ¶ 4.  Both the Barker Hotel and Alma Place are low-income housing complexes in Palo Alto, California.  *Id.*

Defendant PAHC is a private California non-profit corporation.  ECF No. 180-12, Declaration of Georgina Mascarenhas ("Mascarenhas Decl."),¶ 2.  Defendant PAHC Management is a private California non-profit corporation that managed both the Barker Hotel and Alma Place, and is affiliated with Defendant PAHC.  *Id.* at ¶ 3; ECF No. 181-1, Ex. A at 6.  Defendant Mascarenhas is currently Vice President of Property Management for PAHC Management.  Masacarenhas Decl. at ¶ 1.

Defendant Barker Hotel owned the Barker Hotel while Plaintiff was a tenant there from 2008 to 2011, and Defendant Barker Hotel leased Plaintiff his apartment unit.  *Id.* Mascarenhas Decl. at ¶ 4.  Defendant Quinn was a site manager at the Barker Hotel during Plaintiff's tenancy.  ECF No. 181, Ex. B, Deposition of James West ("West Depo.") at 137:5-22; *see also* TAC at ¶ 15.

Defendant Alma Place is a California limited partnership that owned Alma Place while Plaintiff was a resident at Alma Place, and that leased Plaintiff his unit.  Mascarenhas Decl. at ¶ 5.  Defendant Harrison was assistant property manager at Alma Place, *id.* at ¶ 12, and Defendant Fields was property manager at Alma Place, *id.* at ¶ 13.  Defendant Granadosin was Defendant Fields' supervisor.  ECF No. 181-1, Ex. D.  Defendant Gonzalez worked at PAHC Management.  Mascarenhas Decl. at ¶ 4.  Defendants Barker Hotel and Alma Place are subsidiaries of Defendant PAHC.  ECF No. 181-1, Ex. A at 6.

### 1.  Plaintiff's Tenancy at the Barker Hotel from 2008 to 2011

Plaintiff resided at the Barker Hotel from December 2008 to July 2011.  TAC ¶ 4.  There is little information in the record about Plaintiff's tenancy at the Barker Hotel.  Defendants' submissions with their motion for summary judgment focus largely on Plaintiff's tenancy at Alma

Place, and Plaintiff attached no evidence to his late opposition. Accordingly, to provide some background on Plaintiff's Barker Hotel tenancy, the Court discusses the allegations in Plaintiff's TAC, although the Court does not assume their truth. Fed. R. Civ. P. 56(e) (in opposing a motion for summary judgment, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial").

In Plaintiff's TAC, Plaintiff alleges that when Plaintiff inquired about renting a unit at the Barker Hotel, Defendant Quinn "informed Plaintiff that there was very little criminal activity in this area of Palo Alto and only mentioned the occasional noise from a restaurant across the street." TAC at ¶ 21. Plaintiff also alleges that Defendant Quinn only permitted Plaintiff to view units on the second floor of the Barker Hotel, whereas "[t]he first floor unit were all occupied by white tenants." *Id.* at ¶ 75.

Plaintiff moved into Unit 19 at the Barker Hotel on December 16, 2008. *Id.* at ¶ 33. Plaintiff alleges that when he met with Defendant Quinn on December 24, 2008 to sign his lease, "Defendant [Quinn] became impatient and began to yell at Plaintiff and insisted that Plaintiff sign the rental agreement." *Id.* at ¶ 37. Plaintiff alleges that he called the PAHC main number and spoke to Defendant Granadosin about Defendant Quinn's behavior. *Id.* at ¶ 40. Plaintiff alleges that his relationship with Defendant Quinn became increasingly hostile, and that on one occasion in July 2009 Defendant Quinn "intentionally assault [sic] me by kicking me in the leg." *Id.* at ¶ 46.

Across the street from the Barker Hotel was the B412 nightclub, which, according to Plaintiff, "attracted a large loud and rowdy ground [sic] of night club goers." *Id.* at ¶ 56. In July 2009, Plaintiff attended a Palo Alto City Council meeting to complain about the noise from B412. *Id.* at ¶ 59. After the meeting, a Palo Alto police officer visited Plaintiff to discuss Palo Alto's noise ordinance and told Plaintiff that the police department "was not going to do anything about the noise." *Id.* at ¶ 61. Eventually, the B412 nightclub closed. *Id.* at ¶ 64.

Plaintiff also alleges that Defendant Barker Hotel and Defendant Quinn withheld tenant mail on occasion. *Id.* at ¶ 77. In February 2011, Plaintiff complained to his congressional

representative about the mail issues. *Id.*

Sometime before July 2011, when a unit became available at Alma Place, Plaintiff inquired about moving to Alma Place. Mascarenhas Decl. at ¶ 7. Plaintiff asked if he could move into Alma Place by the end of July 2011, but maintain tenancy at the Barker Hotel into August without paying rent at the Barker Hotel, so that Plaintiff could gradually move his possessions from the Barker Hotel to Alma Place. *Id.* Defendant Mascarenhas denied Plaintiff's request to remain at the Barker Hotel without paying August rent, but permitted Plaintiff to stay in his Barker Hotel unit until August 3, 2011. *Id.*

### 2. Tenancy at Alma Place from 2011 to 2015

Plaintiff moved into Alma Place on July 30, 2011. ECF No. 181-1, Mascarenhas Decl., Ex. B (Plaintiff's resident ledger). Plaintiff leased Unit 221 at Alma Place in exchange for monthly rent of $485. *Id.*; *see also* Glaessner Decl., Ex. J (lease agreement between Plaintiff and Defendant Alma Place). Plaintiff resided at Alma Place until April 2015. Mascarenhas Decl. ¶ 5.

#### a. After Plaintiff Complained About Noise in 2014, Defendants Offered to Move Plaintiff to a Different Unit, but Plaintiff Did Not Accept the Offer

During his tenancy at Alma Place, Plaintiff complained several times about noise from various other tenants. First, Plaintiff testified that he complained several times that the tenant living below Plaintiff in Unit 121 made excessive noise: "I know I complained multiple times. My best estimate would be six, seven." West Depo. 251:1-9. That tenant moved out of Unit 121 approximately a year and a half before Plaintiff left Alma Place. *Id.* at 251:21-252:7.

Second, Plaintiff testified that at one point an unidentified tenant in the building was yelling racial slurs. *Id.* at 171:18-24. After Plaintiff reported the incident to Defendant Harrison, Defendant Alma Place issued a lease violation to the tenant: "[Defendant Harrison] told me that she knew who it was, and that I think they had issued a lease violation, that other tenants had heard these comments and statements, and that they were addressing it." *Id.* at 174:20-24.

Third, Plaintiff testified that he made two complaints about noise from an upstairs tenant. On one afternoon in September 2014, Plaintiff testified, the tenant in the unit above Plaintiff's

4

"had his window open, and he had his television up very loudly. And I could hear it as though as I was in the room with him." West Depo. at 159:20-23. Plaintiff conceded that the incident did not occur during Alma Place's quiet hours, which ran from the late evening to early morning. *Id.* at 160:7-9. Plaintiff reported the noise to Defendant Harrison, who said that she would not investigate because quiet hours were not in effect. *Id.* at 160:10-13.

On another occasion, the tenant in the unit above Plaintiff's made noise because, according to Plaintiff, "I believe [the tenant] was disassembling the bed and constructing his own bed in the unit." *Id.* at 258:23-259:3. Plaintiff testified that Defendant Harrison "issued a lease violation and had given instructions for the – for the tenant in 321 to not wear shoes when he was in the unit." *Id.* at 285:9-13.

At some point later, Defendant Fields offered to move Plaintiff to a unit on the third floor to address Plaintiff's complaints about overhead noise: "[A]t some point I did make a decision about whether I wanted to move into or transfer into the unit that I was showed in the lower 300s." *Id.* at 267:3-5. Plaintiff "decided I did not want to move into that unit." *Id.* at 267:12-14. Plaintiff testified that the unit "was not in completed repair form, and it was very hot. And so it had all these undesirable features to it that was – made it of no interest to me." *Id.* at 269:9-11.

Later in 2014, Defendants made further transfer offers to Plaintiff. On September 8, 2014, Defendant Fields wrote that Defendant Fields wished to offer Plaintiff an opportunity to move to a renovated unit to address Plaintiff's complaints about overhead noise:

> Dear Mr. West,
>
> I would like to speak with you in person about a possible transfer of units from 221 to the next available remodeled unit on the third floor. I offer it to you as a second opportunity for a transfer both as a solution to your problem with noise in the unit above you and as an opportunity for you to enjoy the benefits of a newly remodeled unit. . . . Stop by the office, or email me and let me know what time might work best for you to meet.
>
> Thank you,
>
> April Fields
> Senior Manager, Alma Place

United States District Court
Northern District of California

Glaessner Decl., Ex. L.

On September 29, 2014, Defendant Fields wrote to Plaintiff to follow up on whether Plaintiff was interested in a third floor unit: "We have yet to begin the renovation on the unit 314 but I wanted to check in with you on whether or not you are interested in this solution to the problem of overhead noise with a transfer to 314." Glaessner Decl., Ex. M. Defendant Fields continued: "You have seen other remodeled units, in fact, I offered you the very first remodeled unit when I offered you unit 309." *Id.* Finally, Defendant Fields asked Plaintiff to respond if he was interested: "Please let me know your position relative to this change as a solution to your request that I take action in response to the overhead noise complaints you brought to my attention." *Id.*

On October 2, 2014, Plaintiff wrote a letter in response to Defendant Fields' September 29, 2014 letter, and said that he had questions and concerns about Unit 314: "I am ***interested*** in the transfer option to 314 but I have questions and concerns." Glaessner Decl., Ex. N (emphasis in original). Plaintiff listed six questions:

- How will the transfer affect my current rental arrangements at Alma Place-PAHC?
- When will the unit be available?
- Will I be given ample time and notice to move? (if I were to move)?
- Is it possible to get dark colored restraint/stain restraint carpet?
- Will I be able to view the unit once it is completed?
- Any other available 3rd Floor unit?

*Id.*

On Friday, October 3, 2014, Defendant Fields wrote a letter back to Plaintiff, and responded to Plaintiff's six questions as follows:

- The transfer will have no effect on your current rental arrangement at Alma Place. It was planned with that point in mind.
- It will take approximately 1 week if the vendors are all available for the selected dates. I plan to begin on Monday October 6.
- You may begin preparations right away with the one week of vendor/maintenance activity in mind. We will let you know the actual transfer ready date by giving you a key to the unit. You will return your unit key when you have completed your relocation within a reasonable timeframe.

- The carpet selections are stain resistant and are not negotiable for change of color.
- You may view the unit once it is complete.
- There are other units on the third floor at a higher rental rate. You may take interest in another unit but will be expected to pay the rental rate assigned to that unit.

Glaessner Decl., Ex. O.

Defendant Fields asked if Plaintiff was willing to commit to renting Unit 314: "I would appreciate a commitment from you to accept the offer of transfer by Sunday by 4 pm. . . . If I do not hear from you by 4pm on Sunday we will make other arrangements to fill the unit." *Id.*

Plaintiff wrote a letter back to Defendant Fields on October 5, 2014. West Depo. at 321:3-14. Plaintiff stated that he would commit to renting Unit 314 only if Defendants would permit Plaintiff to reside in the unit for 24-48 hours and then decide whether he would stay:

> I'm willing to commit to transferring to Unit 314 conditioned upon my being able to view, examine, and tour the completely remodeled unit, to occupy Unit 314 in its entirety, and after viewing, I'd be given a reasonable amount of time, 24 to 48 hours, to indicate my acceptance of the unit and proceed with my moving arrangements.

*Id.* at 321:6-12. Defendants' response to Plaintiff's proposal is not in the record.

On October 19, 2014, Defendant Fields wrote another letter to Plaintiff stating that renovation work on Unit 314 had begun and asking if Plaintiff was still interested in the unit: "I would like to speak with you in person about the offer of transfer to 314." Glaessner Decl., Ex. P. Defendant Fields asked Plaintiff to respond if Plaintiff was interested: "Please plan to meet with me at your earliest convenience. If you are declining the offer, there is no need to schedule a meeting." *Id.*

Plaintiff testified that Plaintiff did not respond to Defendant Fields' request to meet: "I didn't feel it was necessary to meet with her at this point because the work to renovate the unit hadn't begun, it hasn't been completed, there is nothing for me to view." West Depo. at 327:18-21. Plaintiff could not otherwise remember if he responded to Defendant Fields' October 19, 2014 email. *Id.* at 328:10-16. Eventually, a white male tenant moved into Unit 314. *Id.* at 333:4-24.

### b. Plaintiff Complained About Mail Delivery

7

On several occasions, Plaintiff complained to Defendant Harrison and Defendant Fields about issues related to mail delivery at Alma Place. West Depo. at 76:16-77:11.

### c. Plaintiff's December 2014 Failure to Pay Rent and Ensuing Move-Out Agreement

Plaintiff stopped paying rent to Defendant Alma Place in December 2014. Mascarenhas Decl. at ¶ 11; *see also* Mascarenhas Decl., Ex. B (Plaintiff's resident ledger as of January 2015 showing that Plaintiff failed to pay rent for December 2014 and January 2015).

On December 8, 2014, Defendant Harrison issued Plaintiff a three-day notice that Plaintiff had failed to pay his December 2014 rent. Glaessner Decl., Ex. K (copy of notice). The notice stated that as a result of Plaintiff's failure to pay rent, Plaintiff was "in violation of the terms of [his] rental agreement." *Id.* At his deposition, Plaintiff conceded that Plaintiff did not pay rent in December 2014. West Depo. 218:22-24, 219:22-25. Plaintiff testified that he told Defendant Alma Place via an email that "there were ongoing noise issues, and I was seeking a solution to those e-mails prior" to paying rent, although that email is not in the record. *Id.* at 220:7-17.

On January 26, 2015, Plaintiff and Alma Place settled the rent dispute. Mascarenhas Decl., Ex. D. In the settlement, Defendants agreed not to pursue Plaintiff's past-due rent and Plaintiff agreed to vacate his unit by April 10, 2015. Mascarenhas Decl. ¶ 11.

After the agreement between Plaintiff and Defendant Alma Place, Defendant Harrison wrote a letter to Defendant Fields and Defendant Granadosin "to express the great amount of harassment and discomfort" Defendant Harrison had experienced from Plaintiff. Mascarenhas Decl., Ex. C. For example, Defendant Harrison wrote that "James West has threatened to call lawyers at the mention of anything he is unpleased with" and "has knocked on my front door for non-emergency related items late into the evenings on more than one occasion." *Id.* On March 6, 2015, Defendant Fields wrote a letter to Defendant Granadosin complaining that after the agreement, Plaintiff had engaged in "growing antagonism," and that Plaintiff's "intimidation of and interference with management has sown hostility in the community and has caused staff to feel unsafe, threatened, intimidated, and undermined which prevents management from achieving

8

the greater good."  Mascarenhas Decl., Ex. D.

### d. Stairway Access Complaint

In January 2015, Defendant PAHC Management installed locks in a stairwell that led from the Alma Place garage to the residential floors.  Mascarenhas Decl. at ¶ 14; *see* West Depo. at 58:25-59:1 ("So the stairwells that I'm referring to are inside the garage.").  A person could still enter the stairwell from the garage, but could not enter the residential floors from the stairwell without a key to that floor, which all tenants had.  Mascarenhas Decl. at ¶ 14; West Depo. 59:1-16.  According to Defendant Mascarenhas, PAHC Management installed the locks as a "safety measure we felt was necessary for building and tenant security since the garage roll-up door was broken or inoperable multiple times in 2013-2014."  Mascarenhas Decl. at ¶ 14.

On March 29, 2015, Plaintiff wrote a letter to Defendant Fields requesting removal of the locks.  ECF No. 180-9, Ex. F (copy of Plaintiff's letter).  In the letter, Plaintiff requested a "reasonable accommodation of my disability."  *Id.* at 1.  Plaintiff did not specify his disability: "As you know from the annual re-certification that I receive disability income and thus, I am a person with a disability."  *Id.*  Plaintiff complained in the letter that his unspecified disability "makes it difficult to use the buildings [sic] 'slow moving elevator', especially when it is crowded."  *Id.*  Plaintiff also complained about a March 18, 2015 incident in which an Alma Place desk clerk held the elevator for several minutes to assist another tenant.  *Id.*; *see* West Depo. 68:19-69:24 (testifying that the clerk held the elevator for "four, five, six minutes" for another tenant while Plaintiff was waiting to ride to his floor).

In the letter, Plaintiff asked Defendant Fields to disable the locks in the garage stairwell: "Because of my disability, I require a change to the following policy, practice, rule or service in order to fully utilize housing: that I be allowed to enter, exit and access my unit on the 2nd Floor by using the back stairwell and that the locks on that door be disable [sic] to permit this."  Glaessner Decl., Ex. F.

At his deposition, Plaintiff conceded that the Alma Place garage gate had been broken three or four times by November 2013.  West Depo. 238:17-25.  Plaintiff also conceded that

9

Plaintiff had told Defendant Fields and Defendant Harrison on one occasion that Plaintiff was concerned that the "broken gate allows for unauthorized access to all areas of the building at all times during the day or night." *Id.* at 239:2-8.

### e. Plaintiff's Request to Extend His Move-Out Date by Three Months

On March 30, 2015, Plaintiff requested an extension of his April 10, 2015 move-out date. Plaintiff and Defendants had agreed to the April 10, 2015 move-out date in the January 26, 2015 settlement reached after Plaintiff failed to pay rent. Mascarenhas Decl. at ¶ 11.

Plaintiff requested the extension via a letter addressed to Steven Naumchik, an attorney for Defendant Alma Place. ECF No. 180-10, Glaessner Decl., Ex. G (copy of Plaintiff's letter). Plaintiff stated in the letter that in February 2015, "I was diagnosed with a Viral Respiratory Infection (VRI) that lasted aprx. 21 days. The VRI along with my existing disability substantially impaired my ability to plan, search and make arrangements to move out." *Id.* Plaintiff requested a new move-out date of July 10, 2015: "Therefore, I am requesting a change of the move out date to Friday, July 10, 2015 by 5pm." *Id.* Plaintiff conceded at his deposition that he never identified his disability to Defendants: "I never told them what my disability was." West Depo. at 31:20-24.

Plaintiff testified that he attempted to get a letter to support his move-out extension request from a "Dr. John," but Plaintiff never obtained such a letter. *Id.* at 37:5-38:12. Plaintiff also testified that he received treatment for the respiratory infection at the University of California San Francisco Urgent Care Center ("UCSF") beginning in February 2015. *Id.* at 39:3-23. According to Plaintiff, Naumchik, the attorney for Defendant Alma Place, rejected Plaintiff's request to extend his move-out date by written email. West Depo. 36:13-18.

Around the same time, Defendant Fields provided Plaintiff PAHC forms that Plaintiff was to complete if Plaintiff wished to request a reasonable accommodation. West Depo. at 201:13-21. On April 1, 2015, Defendant Fields gave Plaintiff a form on PAHC Management and Services letterhead titled "Certification of Need for Special Reasonable Accommodation or Special Unit." Glaessner Decl., Ex. I (copy of form). Plaintiff signed the form and dated it, but did not complete the form, did not identify his disability, and did not have a doctor complete the certification, which

Case No. 17-CV-00238-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

includes a field for a medical professional to check whether the tenant "has a disability as defined below." *Id.* at 1. Defendant Fields also gave Plaintiff a form titled "Request for a Reasonable Accommodation" on PAHC Management and Services letterhead, but Plaintiff did not complete that form. *Id.* at 3 (copy of form). Plaintiff moved out of Alma Place on April 10, 2015. Mascarenhas Decl. at ¶ 14.

### 3. Plaintiff's HUD Complaint

On October 28, 2014, Plaintiff filed a housing discrimination complaint with the United States Department of Housing and Urban Development ("HUD"). ECF No. 181-1, Mascarenhas Decl., Ex. A at 1 (HUD's resolution of Plaintiff's complaint). Plaintiff's HUD complaint concerned some of the events at Alma Place described above, primarily Plaintiff's noise complaints. *Id.* at 5–6. Plaintiff specifically complained that Defendants discriminated against Plaintiff and retaliated against Plaintiff in violation of the Fair Housing Act. *Id.* at 4. Plaintiff also alleged violations of the Rehabilitation Act and Title VI of the Civil Rights Act of 1964, but HUD determined that those statutes "were inapplicable because the subject property was not a recipient of federal funds." *Id.* at 5.

During the HUD investigation, Defendant Alma Place offered Plaintiff another opportunity for Plaintiff to move to Unit 314, "provided that [Plaintiff] accept by close of business on 12/2/14." *Id.* at 11. According to HUD, "at around 5:25 p.m. on 12/2/14 the complainant [Plaintiff] emailed a conditional acceptance premised on multiple prerequisites." *Id.* Accordingly, Defendant Alma Place's offer expired "when [Plaintiff] did not accept within a timely manner, and the unit was offered to another applicant on 12/3/14." *Id.*

On January 15, 2015, after an investigation, HUD issued a finding of no reasonable cause on Plaintiff's allegations against Defendants. *Id.* at 12.

### B. Procedural History

On January 17, 2017, Plaintiff, proceeding pro se, filed his original complaint and an application to proceed in forma pauperis ("IFP"). ECF Nos. 1–2. On February 2, 2017, Plaintiff declined magistrate judge jurisdiction. ECF No. 5. That same day, Magistrate Judge Nathanael

Case No. 17-CV-00238-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Cousins granted Plaintiff's IFP application and issued a report and recommendation recommending dismissal of Plaintiff's original complaint with leave to amend because the original complaint "provide[d] no facts to support" the claims in the complaint.  ECF No. 6 at 2.

On February 9, 2017, the instant case was reassigned to the undersigned judge.  ECF No. 8.  On April 17, 2017, the Court adopted Judge Cousins' report and recommendation and dismissed Plaintiff's original complaint with leave to amend.  ECF No. 11.  On May 9, 2017, Plaintiff filed a first amended complaint.  ECF No. 15.

On September 12, 2017, Defendants filed a motion to dismiss Plaintiff's first amended complaint.  ECF No. 57.  Then, on October 3, 2017, Plaintiff filed a second amended complaint.  ECF No. 66.

On October 19, 2017, the parties filed a stipulation allowing Plaintiff to file a third amended complaint ("TAC") by November 1, 2017, and allowing Defendants to respond to the TAC by November 30, 2017.  ECF No. 69.  On October 24, 2017, the Court granted the parties' stipulation and denied as moot Defendants' motion to dismiss Plaintiff's first amended complaint.  ECF No. 73.

On November 1, 2017, Plaintiff filed the TAC.  *See* ECF No. 77.  Plaintiff's TAC lists several statutes and common law causes of action, but does not clearly identify the factual allegations relevant to each cause of action, or against which Defendant(s) Plaintiff brings each cause of action.

Specifically, the TAC asserts causes of action for: (1) violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604; (2) violation of the Rehabilitation Act, 29 U.S.C. § 794; (3) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (4) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955; (5) violation of California Government Code § 11135; (6) violation of 42 U.S.C. §§ 1981–83; (7) violation of 18 U.S.C. §§ 1701–03, 1708; (8) violation of California Penal Code § 530.5; (9) retaliation in violation of the FHA, 42 U.S.C. § 3617; (10) retaliation in violation of the FEHA, Cal. Gov't Code § 12955(f); (11) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42

United States District Court
Northern District of California

U.S.C. §§ 12131 & 12133; (12) disability discrimination in violation of the FEHA; (13) disability discrimination in violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51; (14) fraud and concealment; (15) breach of contract; (16) intentional and negligent infliction of emotional distress; (17) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (18) negligence based on "failure to prevent retaliation, train and supervise"; (19) negligence based on "failure to engage in reasonable accommodation discussions"; (20) breach of an implied covenant of good faith and fair dealing; and (21) violation of the Bane Act, Cal. Civ. Code § 52.1. TAC at ¶¶ 73–114.

On November 2, 2017, the Court held an initial case management conference and set a case schedule. ECF No. 80. The Court set May 25, 2018 as the deadline for the parties to complete fact discovery. *Id.* at 2.

On November 29, 2017, Defendants filed a motion to dismiss portions of Plaintiff's TAC. ECF No. 83. Plaintiff opposed Defendants' motion to dismiss on January 17, 2018, *see* ECF No. 101, and Defendants filed a reply on January 24, 2018. ECF No. 103.

On March 7, 2018, the Court granted in part and denied in part Defendants' motion to dismiss portions of the TAC. ECF No. 109. The Court granted the following:

- The individual Defendants' motion to dismiss Plaintiff's claims for breach of contract, breach of an implied covenant of good faith and fair dealing, negligence based on "failure to prevent retaliation, train, and supervise," and negligence based on "failure to engage in reasonable accommodation discussions" for failure to state a claim, *id.* at 11–13;

- All Defendants' motion to dismiss Plaintiff's claim for fraud and concealment as time-barred by the statute of limitations, *id.* at 13–16;

- Defendant Quinn's motion to dismiss Plaintiff's claims for violation of the FHA, FEHA, 42 U.S.C. §§ 1981–83, UCL, Bane Act, and for intentional and negligent infliction of emotional distress, *id.* at 16–19;

- Defendant Mascarenhas's motion to dismiss Plaintiff's claims for violation of the FHA, FEHA, 42 U.S.C. §§ 1981–83, UCL, Bane Act, and for intentional and negligent infliction of emotional distress, *id.* at 19–21;

- Defendant Fields's motion to dismiss Plaintiff's causes of action for violation of the FHA, violation of the FEHA, violation of 42 U.S.C. §§ 1981–83, intentional and negligent

13

infliction of emotional distress, and violation of the Bane Act, *id.* at 21–23; and

- Defendants Gonzalez, Granadosin, and Harrison's motion to dismiss Plaintiff's causes of action for violation of the FHA and violation of the FEHA, *id.* at 23–28.

For all causes of action that the Court dismissed, the Court granted Plaintiff leave to amend. *Id.* at 29–30.

The Court denied the following portions of Defendants' motion to dismiss: (1) the individual Defendants' motion to dismiss Plaintiff's cause of action for violation of the UCL; and (2) Defendants' motion to dismiss Plaintiff's cause of action for violation of the UCL based on violation of Palo Alto Municipal Code § 9.73. *Id.* at 13, 28.

On March 16, 2018, the Court appointed limited scope pro bono counsel to represent Plaintiff at a settlement conference before Magistrate Judge Nathanael Cousins. ECF No. 111.

On April 9, 2018, Plaintiff filed a motion for leave to file a motion for reconsideration of the Court's order dismissing portions of Plaintiff's TAC. ECF No. 113. On that same date, Plaintiff also filed an administrative motion for an extension of time to file his fourth amended complaint. ECF No. 114. On April 17, 2018, the Court denied Plaintiff's motion for leave to file a motion for reconsideration, but granted Plaintiff's administrative motion for an extension of time to file his fourth amended complaint. ECF No. 116. The Court set April 24, 2018 as the new deadline for Plaintiff to file a fourth amended complaint. *Id.* at 4.

On April 18, 2018, the Court held a case management conference. ECF No. 118. In the Court's ensuing case management order, the Court extended Plaintiff's deadline to file a fourth amended complaint to April 27, 2018. *Id.* The Court also extended the deadline for the parties to complete fact discovery from May 25, 2018 to December 21, 2018. *Id.* at 2. Finally, the Court referred the case to the Federal Pro Se Program "to locate pro bono counsel for a limited-scope appointment to prepare and defendant Mr. West for his deposition." *Id.*

On April 30, 2018, Defendants filed a notice that Plaintiff had failed to file a fourth amended complaint by the April 27, 2018 deadline. ECF No. 121. To this day, Plaintiff has never filed a fourth amended complaint.

On May 1, 2018, the Court appointed Katherine Chao of Olivier Schreiber & Chao LLP to serve as pro bono counsel for Plaintiff, with Ms. Chao's appointment "limited to preparing Plaintiff for, and defending Plaintiff at, his upcoming deposition." ECF No. 122.

On June 7, 2018, Plaintiff filed a motion for appointment of limited-scope pro bono counsel to assist Plaintiff with discovery. ECF No. 127. On June 22, 2018, Judge Cousins granted Plaintiff's motion and expanded Ms. Chao's appointment to include "the limited purpose of representing [Plaintiff] in responding to a motion to compel the production of documents." ECF No. 135.

On August 29, 2018, Judge Cousins ruled that certain of Plaintiff's medical information would be designated "confidential," rather than "highly confidential attorneys' eyes only," because Plaintiff's medical information is at issue in the case. ECF No. 146.

On September 12, 2018, Plaintiff, through his limited-scope counsel Ms. Chao, filed a motion for relief from Judge Cousins' August 29, 2018 discovery order. ECF No. 153. On September 21, 2018, the Court denied Plaintiff's motion for relief. ECF No. 155.

On November 9, 2018, Ms. Chao filed a notice that she had completed her obligations as Plaintiff's limited-scope counsel, including preparing Plaintiff for and representing Plaintiff at his November 7, 2018 deposition. ECF No. 158. On November 12, 2018, the Court terminated Ms. Chao's limited-scope appointment. ECF No. 159.

On December 19, 2018, Judge Cousins denied Defendants' request to compel Plaintiff to sign authorizations to permit discovery of third-party medical records. ECF No. 165.

In that December 19, 2018 order, Judge Cousins also noted that Plaintiff had "requested an extension of fact discovery to Feb. 25, 2019" and "requested appointment of counsel for affirmative discovery assistance." *Id.* Judge Cousins stated that Plaintiff "was advised that both issues need to be raised in a motion directed to trial judge, Judge Koh." *Id.* The order stated that Judge Cousins "recommends against further extensions of time for discovery, *given the lengthy opportunity for discovery in this case.*" *Id.* (emphasis added).

On December 31, 2018, Defendants filed a motion for relief from Judge Cousins'

Case No. 17-CV-00238-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

December 19, 2018 discovery order.  ECF No. 168.  On January 14, 2019, the Court denied

Defendants' motion for relief.  ECF No. 172.

On February 21, 2019, Defendants filed the instant motion for summary judgment.  ECF

No. 180-2 ("Mot.").  Defendants also filed a motion to seal certain material in Defendants' motion

for summary judgment.  ECF No. 180.

On March 1, 2019, Plaintiff filed an administrative motion to extend the time for Plaintiff

to respond to Defendants' sealing motion to March 18, 2019.  ECF No. 184.  Plaintiff did not

request any extension for Plaintiff to respond to Defendants' motion for summary judgment.  *Id.*

On March 6, 2019, the Court granted Plaintiff's administrative motion to extend the time for

Plaintiff to respond to Defendants' sealing motion.  ECF No. 190.  The Court stated that the

"extension affects only the deadline for Plaintiff to file a supporting declaration and does not apply

to any other case deadlines."  *Id.* at 2.  On March 18, 2019, Plaintiff filed an opposition to

Defendants' motion to seal.  ECF No. 191.

On March 28, 2019, Defendants filed an administrative motion to continue the hearing date

on Defendants' motion for summary judgment.  ECF No. 196.  Defendants explained that

Defendants had served Plaintiff with Defendants' motion for summary judgment and motion to

seal by electronic service on February 21, 2019.  *Id.* at 2.  On March 28, 2019, Plaintiff emailed

Defendants' counsel to state that Plaintiff had not received mailed hard copies of the motion for

summary judgment and motion to seal.  *Id.*  Therefore, Defendants mailed Plaintiff hard copies of

the motions on March 28, 2019.  *Id.* at 4.  Defendants moved the Court to extend the hearing on

Defendants' motion for summary judgment from April 11, 2019 to May 9, 2019, "to avoid

Plaintiff now objecting to any summary judgment hearing or order on the ground that he was not

served by mail."  *Id.*  Plaintiff did not oppose Defendants' administrative motion to continue the

hearing date on Defendants' motion for summary judgment.

On April 3, 2019, the Court granted Defendants' administrative motion to continue the

April 11, 2019 hearing on Defendant's motion for summary judgment to May 9, 2019.  ECF No.

197.

On April 25, 2019, Defendants filed a notice that Plaintiff had not filed or served an opposition to Defendants' motion for summary judgment, even after Plaintiff received hard copies of Defendants' motion for summary judgment and motion to seal. ECF No. 200.

On May 2, 2019, the Court vacated the hearing on Defendants' motion for summary judgment and took the motion under submission on the papers. ECF No. 201.

Then, on May 30, 2019, more than three months after Defendants filed their motion for summary judgment and four weeks after the Court took Defendants' motion for summary judgment under submission, Plaintiff filed a two-page "statement of opposition" to Defendants' motion for summary judgment. ECF No. 204.

That same date, Plaintiff also filed two motions. First, Plaintiff filed a motion to stay the Court's ruling on Defendants' motion for summary judgment pending additional discovery. ECF No. 202. Plaintiff claims that "Plaintiff proceeding in pro se did not realize that discovery must be initiated a sufficient period of time in advance of the cut-off date." *Id.* at 3. Second, Plaintiff filed a motion for appointment of counsel "to provide full representation in this case for the prosecuting [sic] this case to completion." ECF No. 203. On June 6, 2019, Defendants opposed both of Plaintiff's motions. ECF Nos. 207, 208.

The arguments in Plaintiff's much-belated motion for additional discovery and motion for appointment of counsel lack merit. The Court gave Plaintiff ample time for discovery. On November 1, 2017, at a case management conference that Plaintiff attended, the Court set the close of fact discovery for May 23, 2018. ECF No. 80. Then, on April 18, 2018, at another case management conference that Plaintiff attended, the Court extended the close of fact discovery to December 21, 2018. ECF No. 118.

Accordingly, the Court extended the fast discovery deadline by seven months and, in total, gave Plaintiff well over a year to conduct fact discovery. Despite those generous deadlines, Plaintiff appears to have conducted *no* fact discovery at all. ECF No. 202 at 7 (Plaintiff's motion for additional discovery stating that Plaintiff "will need to conduct extensive documentary and testimonial discovery"); ECF No. 207 at 2 (Defendants' opposition stating that Plaintiff has

United States District Court
Northern District of California

conducted "no fact discovery [and] no expert discovery").

Plaintiff cannot claim ignorance of the need to conduct fact discovery in advantage of the December 21, 2018 deadline. In fact, as early as November 1, 2017, at the initial case management conference, Plaintiff was aware of the need to conduct fact discovery: "I do have some other, on the other category, about the issuance of civil subpoenas." ECF No. 208-1 (transcript of Nov. 1, 2017 case management conference). Further, Plaintiff said that he had been speaking with Kevin Knestrick of the Federal Pro Se Program about his discovery questions. *Id.*

Plaintiff has not demonstrated diligence either in conducting discovery by the longstanding fact discovery deadlines, or even in requesting the instant extension. Plaintiff has waited until May 30, 2019—more than five months after the close of fact discovery and more than three months after Defendants filed their motion for summary judgment, and less than two months before trial—to make this request. That is so even though Judge Cousins informed Plaintiff on December 19, 2018 that Plaintiff needed to direct any request for an extension of fact discovery or for appointment of counsel to the undersigned, and that Judge Cousins "recommends against further extensions of time for discovery, given the lengthy opportunity for discovery in this case." ECF No. 165. Yet despite that explicit instruction to direct motions to the undersigned, Plaintiff waited more than five months from Judge Cousins' order to file the instant motion for an extension of fact discovery.

Any such extension would prejudice Defendants and the Court by delaying (1) resolution of Defendants' motion for summary judgment, which Defendants briefed more than three months ago and the Court has already taken under submission; (2) the pretrial conference; and (3) the trial in this case. Nor has Plaintiff identified any of the specific discovery that Plaintiff would seek if the Court were to grant Plaintiff another extension of the fact discovery deadlines. *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (holding that a court may deny a request to continue a motion for summary judgment to permit further discovery if the requesting party fails to "set forth in affidavit form the specific facts it hopes to elicit from further discovery"). Accordingly, the Court DENIES Plaintiff's motion to

18

stay the Court's ruling on Defendants' motion for summary judgment pending further discovery.

Plaintiff's late request for pro bono counsel, if granted, would be similarly disruptive to Defendants and the Court. The Court has already taken Defendants' motion for summary judgment under submission. Pro bono counsel would require time to become familiar with the case and conduct Plaintiff's desired "extensive" discovery, and Defendants would almost certainly need to file a revised motion for summary judgment. Further, there is no absolute right to legal representation in a civil action. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *see also United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir. 1995) (noting that appointment of counsel for a pro se plaintiff proceeding in forma pauperis may be designated in "exceptional circumstances"). No such exceptional circumstances exist here, where Plaintiff has "demonstrated sufficient writing ability and legal knowledge to articulate his claim," *id.*, and successfully opposed certain arguments in Defendants' motion to dismiss Plaintiff's TAC.

Moreover, Plaintiff has not demonstrated diligence in filing his request for pro bono counsel, which Plaintiff filed almost two a half years after filing suit, more than five months after the close of fact discovery, more than three months after Defendants filed their motion for summary judgment, and less than two months before trial. *See* ECF No. 118 (Court's scheduling order). Plaintiff offers no good cause for his delay.

Furthermore, the Court has previously obtained substantial assistance for Plaintiff, as the Court appointed limited-scope pro bono counsel for Plaintiff in three facets of this case: (1) to assist Plaintiff at a magistrate judge settlement conference; (2) to prepare Plaintiff for and represent Plaintiff at his deposition; and (3) to assist Plaintiff in responding to Defendants' motion to compel production of documents. ECF Nos. 111, 122, 135. Because Plaintiff's late request for counsel is not justified by exceptional circumstances and would prejudice the Court and Defendants, the Court DENIES Plaintiff's request for appointment of counsel.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). Where a summary judgment motion is unopposed, a court may grant the motion "if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine dispute of material fact." *White v. Aramark*, 670 F. App'x 578, 579 (9th Cir. 2016) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)).

## III.  DISCUSSION

As discussed above, the Court granted in part and denied in part Defendants' motion to dismiss portions of Plaintiff's TAC. ECF No. 109. Although the Court dismissed various claims against specific Defendants, the only one of Plaintiff's 21 claims that the Court dismissed against all Defendants was Plaintiff's fraudulent concealment claim. *See id.* at 30. The Court granted Plaintiff leave to amend the dismissed claims and granted Plaintiff multiple extensions to file a fourth amended complaint, but Plaintiff never filed a fourth amended complaint. Accordingly, Plaintiff's TAC—without the claims that the Court dismissed—is the operative pleading.

United States District Court
Northern District of California

1     Now, Defendants move for summary judgment on all of Plaintiff's remaining claims.

2     Defendants argue that many of Plaintiff's claims are barred by the applicable statutes of

3     limitations, and that Plaintiff has otherwise raised no genuine issue of material fact on his claims.

4     Mot. at 1.  Plaintiff filed no response to Defendants' motion until May 30, 2019—more than three

5     months after Defendants filed their motion for summary judgment and more than four weeks after

6     the Court took Defendants' motion under submission.  ECF No. 204.

7     Even if the Court were to consider Plaintiff's late response, Plaintiff's late response cites

8     no evidence and does not oppose any of Defendants' arguments for why summary judgment is

9     warranted on any of Plaintiff's specific claims.  Rather, Plaintiff contends that Defendants' motion

10    is barred by res judicata due to a prior state court settlement and that the Court lacks jurisdiction

11    over Defendants' motion.  ECF No. 204.  Neither contention has merit.

12    First, Plaintiff contends that Defendants' motion "is based on (historical) facts settled in

13    the prior state court action and that are precluded by agreement and state court order."  ECF No.

14    204 at 1.  However, Plaintiff's argument is self-contradictory.  *Plaintiff* is the party that brought

15    the instant lawsuit.  If Plaintiff contends that res judicata bars Defendants' attempt to resolve the

16    issues at stake in the instant lawsuit, then res judicata necessarily bars Plaintiff's own attempt to

17    resolve those issues in Plaintiff's favor.  *See Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d

18    1106, 1110 (9th Cir. 2018) (holding that if res judicata is applicable, it bars *any* relitigation of a

19    final judgment).  Plaintiff cannot assert res judicata against Defendants' motion but continue to

20    seek his own relief on the same causes of action.  To the extent Plaintiff concedes that res judicata

21    bars relitigation of the causes of action at issue in the instant case, that alone provides a basis to

22    grant Defendants' motion for summary judgment.

23    Second, Plaintiff contends that the Court lacks jurisdiction because Plaintiff filed a motion

24    for additional discovery.  ECF No. 204 at 2.  However, Plaintiff offers no argument for how

25    Plaintiff's late motion deprives the Court of jurisdiction.  Plaintiff cites cases arising in the

26    administrative law context, where the courts lacked jurisdiction as a statutory matter.  *See, e.g.*,

27    *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) (discussing

28
                                                     21

United States District Court
Northern District of California

courts' jurisdiction to review FERC licensing orders). Here, Plaintiff brought a private civil action against Defendants, and federal question jurisdiction exists because Plaintiff brings multiple claims arising under federal law. *See* TAC at ¶ 75 (alleging claims under the FHA, Rehabilitation Act, Civil Rights Act of 1964, and 42 U.S.C. §§ 1981–83, among others).

Further, the Court denied Plaintiff's late motion for additional discovery because even though Plaintiff had more than a year to conduct discovery, Plaintiff conducted no fact discovery at all, and only moved for an extension of the discovery deadline five months after the discovery deadline passed, three months after Defendants filed their motion for summary judgment, and four weeks after the Court took Defendants' motion for summary judgment under submission. Plaintiff's late motion provides no basis to deprive the Court of jurisdiction, nor to further delay resolution of Defendants' motion for summary judgment.

Accordingly, the Court now addresses Defendants' arguments for why each of Plaintiffs' causes of action fail as a matter of law. Plaintiff's claims relate to two separate periods of tenancy at two separate buildings: (1) Plaintiff's 2008 to 2011 tenancy at the Barker Hotel; and (2) Plaintiff's 2011 to 2015 tenancy at Alma Place. Because all of Plaintiff's causes of action premised on events during Plaintiff's Barker Hotel tenancy are barred by the applicable statutes of limitation, the Court first discusses those claims. Then, the Court discusses Plaintiff's causes of action premised on events during Plaintiff's Alma Place tenancy.

**A. Claims Concerning Plaintiff's Tenancy at the Barker Hotel Between 2008 and 2011**

The Court first addresses Plaintiff's claims regarding his tenancy at the Barker Hotel between 2008 and 2011, all of which are barred by the applicable statutes of limitation. As noted in the Court's order on Defendants' motion to dismiss, Plaintiff's TAC at times lists several statutes but "identifies neither the specific Defendants that are being sued under each statute nor the specific actions that allegedly violated each statute." ECF No. 109 at 17.

Plaintiff appears to bring the following causes of action predicated on Defendants' alleged conduct during Plaintiff's tenancy at the Barker Hotel: (1) FHA discrimination and retaliation; (2) FEHA discrimination and retaliation; (3) violation of 42 U.S.C. §§ 1981–83; (4) violation of the

22

Civil Rights Act of 1964; (5) Rehabilitation Act discrimination; (6) violation of California

Government Code § 11135; (7) ADA discrimination; (8) Unruh Act discrimination; (9) breach of

contract and breach of the implied covenant of good faith and fair dealing; (10); IIED and

negligent infliction of emotional distress; (11) violation of California's UCL; (12) various

negligence claims; and (13) violation of the Bane Act.  *See* TAC ¶¶ 73–114.

As Defendants contend, all of the applicable statutes of limitation bar Plaintiff's claims to

the extent Plaintiff seeks relief based on Plaintiff's tenancy at the Barker Hotel.  Plaintiff left the

Barker Hotel on August 3, 2011 to move into Alma Place.  Mascarenhas Decl. at ¶ 7.  Plaintiff

filed suit on January 17, 2017, five and a half years after the last event related to the Barker Hotel.

*See* ECF No. 1 (Plaintiff's original complaint).  However, the longest statute of limitations for any

of Plaintiff's claims is four years, and many are only two years.  Specifically, the statutes of

limitation for each of Plaintiff's claims are as follows:

- **FHA**: Two years.  *See* 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice.").
- **FEHA**: Two years.  "An aggrieved person may commence a civil action in an appropriate court not later than two years after the occurrence or the termination of an alleged discriminatory housing practice."  Cal. Gov't Code § 12989.1.
- **42 U.S.C. §§ 1981–83**: Two years.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding that the statute of limitations for such claims is based on the statute of limitations for personal injury actions in the state in which the cause of action arose); Cal. Civ. Proc. Code § 335.1 (stating that the limitations period for "[a]n action for assault, battery, or for the death of, an individual caused by the wrongful act or neglect of another" is two years).
- **Civil Rights Act of 1964**: Two years.  *Wilson v. Garcia*, 471 U.S. 261, 279 (1985) (holding that courts borrow the statute of limitations for actions under 42 U.S.C. § 2000d from 42 U.S.C. § 1983); *see* Cal. Civ. Proc. Code § 335.1 (two year statute of limitations for personal injury).
- **Rehabilitation Act**: Two or three years.  *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 n.11 (9th Cir. 2001) (stating that the statute of limitations for a Rehabilitation Act claim is borrowed from the applicable state's statute of limitations for personal injury; Cal. Civ. Proc. Code § 335.1 (two year statute of limitations for personal injury); *but see Sharkey v. O'Neal*, 778 F.3d 767, 772 (9th Cir. 2015) (suggesting that three-year statute of limitations may apply to Rehabilitation Act claims in California).
- **Cal. Gov't Code § 11135**: Three years.  *Sharkey*, 778 F.3d at 771.

United States District Court
Northern District of California

- **ADA**: Three years. *Id.*
- **Unruh Act**: Two years. *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 574 (N.D. Cal. 2018).
- **Breach of contract and breach of the implied covenant of good faith and fair dealing**: Four years. *Gilkyson v. Disney Enters., Inc.*, 244 Cal. App. 4th 1336, 1341 (2016) (holding that the statute of limitations "[f]or breach of a written contract" is four years) (citing Cal. Civ. Proc. Code § 337).
- **IIED**: Two years. *See* Cal. Civ. Proc. Code § 335.1.
- **UCL**: Three years. Cal. Civ. Proc. Code § 338(a) (stating that the limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture" is three years).
- **Negligence**: Two years. *See* Cal. Civ. Proc. Code § 335.1.
- **Bane Act**: Two or three years depending on the underlying violation of rights. *Wilson v. City of Oakland*, 2012 WL 669527, at *3 n.6 (N.D. Cal. Feb. 29, 2012) ("For liability arising out of common law neglect or personal injury, a two-year statute of limitations applies, but for statutory actions, a three-year limitation applies.").

Accordingly, to the extent that Plaintiff seeks relief based on events during Plaintiff's Barker Hotel tenancy, Plaintiff's causes of action are all time-barred. Plaintiff has raised no contrary argument. Thus, to the extent that Plaintiff seeks relief based on events occurring at the Barker Hotel, the Court grants Defendants' motion for summary judgment.

**B. Claims Concerning Plaintiff's Tenancy at Alma Place Between 2011 and 2015**

The Court next discusses Plaintiff's claims predicated on Plaintiff's tenancy at Alma Place between August 2011 and April 2015. Construed liberally, Plaintiff's TAC brings the following claims against various Defendants based on Plaintiff's Alma Place tenancy: (1) FHA discrimination and retaliation; (2) FEHA discrimination and retaliation; (3) violation of 42 U.S.C. §§ 1981–83; (4) violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (5) Rehabilitation Act discrimination; (6) violation of California Government Code § 11135; (7) violation of criminal mail theft statutes; (8) ADA discrimination; (9) Unruh Act discrimination; (10) breach of contract and breach of the implied covenant of good faith and fair dealing; (11); IIED; (12) violation of California's UCL; (13) various negligence claims; and (14) violation of the Bane Act. *See* TAC ¶¶ 73–114. The Court addresses Plaintiff's claims in turn.

**1. FHA and FEHA Discrimination Claims**

Plaintiff alleges that Defendants violated the FHA and FEHA by discriminating against

24

Plaintiff. Specifically, Plaintiff alleges that Defendants (1) discriminated against Plaintiff on the basis of Plaintiff's race, TAC at ¶ 75; and (2) discriminated against Plaintiff on the basis of disability by failing to extend Plaintiff's move-out date from April 2015 to July 2015, *id.* at ¶ 90. The substantive analysis of Plaintiff's FHA and FEHA claims is identical. *Walker v. City of Lakewood*, 272 F.3d 1114, 1131 n.8 (9th Cir. 2001) (holding that the Ninth Circuit "appl[ies] the same standards to FHA and FEHA claims"). The Court discusses Plaintiff's race discriminations claim, and then Plaintiff's disability discrimination claim.

### a. FHA and FEHA Race Discrimination Claims

First, Plaintiff's race discrimination claims are barred by the FHA and FEHA statute of limitations. As set forth above, the statute of limitations under both the FHA and FEHA is two years. *See* 42 U.S.C. § 3613(a)(1)(A) (FHA statute of limitations); Cal. Gov't Code § 12989.1 (FEHA statute of limitations). Here, Plaintiff filed his complaint on January 17, 2017, and all of the events of alleged race discrimination occurred more than two years prior to that filing.

The most recent episode of alleged race discrimination alleged in the TAC occurred on December 2, 2014, two years and one month before Plaintiff filed his original complaint. During HUD's investigation into Plaintiff's housing discrimination complaint, Defendant Alma Place offered Plaintiff another opportunity for Plaintiff to move to Unit 314, "provided that [Plaintiff] accept by close of business on 12/2/14." Mascarenhas Decl., Ex. A at 11 (HUD resolution of Plaintiff's complaint). According to HUD, "at around 5:25 p.m. on 12/2/14 the complainant [Plaintiff] emailed a conditional acceptance premised on multiple prerequisites." *Id.* Accordingly, Defendant Alma Place's offer expired "when [Plaintiff] did not accept within a timely manner, and the unit was offered to another applicant on 12/3/14." *Id.*

Plaintiff appears to allege that Defendant Alma Place's actions constituted race discrimination. TAC at ¶ 75 (discussing in Plaintiff's race discrimination claim Defendant Alma Place's renewed offer). However, the events occurred on December 2, 2014, more than two years before Plaintiff's January 17, 2017 original complaint, and any FHA or FEHA claims premised on the December 2, 2014 transfer offer are thus time-barred.

Nor has Plaintiff shown that he is entitled to tolling under the FHA. A pending HUD complaint tolls the limitations period on a claim if the HUD complaint is based on the same discriminatory conduct as the claim. 42 U.S.C. § 3613(a)(1)(B) ("The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice."). Here, the December 2, 2014 renewal offer occurred *during* HUD's investigation, and could not have been a subject of Plaintiff's October 28, 2014 complaint to HUD. *See* Mascarenhas Decl., Ex. A. at 3. Accordingly, because Plaintiff's race discrimination claims are time-barred, the Court grants Defendants' motion for summary judgment on Plaintiff's FHA and FEHA race discrimination claims.

This conclusion also disposes of Plaintiff's race discrimination claim under the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which is premised on the same December 2014 (and earlier) conduct, and is similarly subject to a two-year statute of limitations. *See Wilson*, 471 U.S. at 279 (holding that courts borrow the statute of limitations for actions under 42 U.S.C. § 2000d from 42 U.S.C. § 1983); *see* Cal. Civ. Proc. Code § 335.1 (two-year statute of limitations for personal injury). Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's claim for race discrimination in violation of 42 U.S.C. § 2000d.

### b. FHA and FEHA Disability Discrimination Claims

The Court next turns to Plaintiff's FHA and FEHA disability discrimination claims. Plaintiff's disability discrimination claims arise from Plaintiff's March 2015 request to extend his move-out date, and thus are not time-barred by the two-year statutes of limitations. However, Plaintiff has not identified a genuine dispute of material fact as to Plaintiff's disability discrimination claims.

To prove a disability discrimination claim under the FEHA and FHA for failure to provide a reasonable accommodation, Plaintiff must show:

> (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to

26

afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*Dubois v. Ass'n of Apartment Owners of 2987 Kalalaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Defendants argue that Plaintiff cannot show that any Defendant knew or should have known that Plaintiff had a disability protected by the FHA and FEHA. Mot. at 13. The Court agrees.

Plaintiff has not shown that Plaintiff advised Defendants of a qualifying disability. In a March 30, 2015 letter to Steven Naumchik, an attorney for Defendant Alma Place, Plaintiff stated that in February 2015, "I was diagnosed with a Viral Respiratory Infection (VRI) that lasted aprx. 21 days. The VRI along with my existing disability substantially impaired my ability to plan, search and make arrangements to move out." Glaessner Decl., Ex. G. Plaintiff requested a new move-out date of July 10, 2015: "Therefore, I am requesting a change of the move out date to Friday, July 10, 2015 by 5pm." *Id.* However, Plaintiff's letter did not specify his "existing disability," and Plaintiff conceded at his deposition that he *never* told any Defendant his disability: "I never told them what my disability was." West Depo. at 31:20-24.

Defendants attempted to get more information from Plaintiff, but Plaintiff did not follow through. On April 1, 2015, Defendant Fields gave Plaintiff a form on PAHC Management and Services letterhead titled "Certification of Need for Special Reasonable Accommodation or Special Unit." Glaessner Decl., Ex. I. Plaintiff signed and dated the form, but did not complete the form, did not identify his disability, and did not have a medical professional complete the certification, which includes a field for a medical professional to check whether the tenant "has a disability as defined below." *Id.* at 1. Defendant Fields also gave Plaintiff a form titled "Request for a Reasonable Accommodation" on PAHC Management and Services letterhead, but Plaintiff did not complete that form. *Id.* at 3.

Thus, without more information about Plaintiff's disability, Defendants could not have known whether Plaintiff had a disability requiring Defendants to extend Plaintiff's move-out date, and how Defendants should respond. *See United States v. Cal. Mobile Home Park Mgmt. Co.*,

27

107 F.3d 1374, 1380 (9th Cir. 1997) (holding that whether an accommodation request is "reasonable" is highly fact-specific); *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) ("[T]he FHA requires only accommodations necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled."); *see also Weinrich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997) (holding that a defendant may request certification of a disability before providing a reasonable accommodation). In the instant litigation, Plaintiff has not identified any evidence related to the "existing disability" referenced in Plaintiff's March 30, 2015 letter to Steven Naumchik, or why that disability required a reasonable accommodation.

To the extent that Plaintiff attempts to rely on his February 2015 respiratory infection, that temporary condition does not qualify as a disability. A disability under the FHA is defined as "a physical or mental impairment which substantially limits one or more of such person's major life activities," or "a record having such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 3602(h). This definition is coextensive with the definition of a disability under the ADA. *See* 42 U.S.C. § 12102(1). It is undisputed that Plaintiff's viral respiratory infection lasted only three weeks. Plaintiff's March 30, 2015 letter to Naumchik stated that Plaintiff's infection lasted approximately 21 days. Glaessner Decl., Ex. G. Further, Plaintiff testified at his deposition only that he made "multiple visits" to an urgent care center around February 2015. West Depo. at 39:4-20.

In analyzing claims based on temporary disabilities, the Ninth Circuit has observed that "[s]everal courts have held that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA." *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996). Thus, in *Sanders*, the Ninth Circuit held that a plaintiff's four-month psychological impairment did not constitute a disability under the ADA. *Id.* The Ninth Circuit distinguished *Sanders* from its previous decision in *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989), where the Ninth Circuit had concluded that "episodic outbreaks of an underlying permanent condition" qualified as a disability. *Sanders*, 91 F.3d at 1354 (citing *Kimbro*, 889 F.2d

28

at 878–79); *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) ("a temporary, non-chronic impairment of short duration" is not a protected disability).

In line with those principles that a temporary, non-chronic impairment is not a qualifying disability, a district court has concluded that a short, temporary respiratory infection similar to Plaintiff's infection does not qualify as a disability. In that case, the plaintiff produced a doctor's note—which Plaintiff has not done—showing that the plaintiff "suffered from acute bronchitis and an upper respiratory infection that caused him to miss seventeen days of school." *Ramirez v. N.Y.C. Bd. of Educ.*, 481 F. Supp. 2d 209, 218 (S.D.N.Y. 2007). The court held that those "temporary conditions" were not "substantially limiting disabilities." *Id.*

Plaintiff's 21-day, temporary respiratory infection is indistinguishable from the situation in *Ramirez*. *See* 42 U.S.C. § 3602(h) (an impairment qualifies as a disability under the FHA only if it "substantially limits" major life activities). Further, Plaintiff did not request an extension of his move-out date until March 30, 2015, only 11 days before the scheduled April 10, 2015 move-out date—and indisputably after Plaintiff's respiratory infection had *ceased*. If Plaintiff's respiratory infection began sometime in February 2015 and lasted three weeks, the infection was necessarily healed by the time Plaintiff wrote his March 30, 2015 letter. Plaintiff's own letter recognizes that the infection was in the past, as he wrote that the infection "substantially impai*red* my ability to plan, search and make arrangements to move out." Glaessner Decl., Ex. G. (emphasis added).

Thus, because Plaintiff cannot prove that Defendants knew or should have known of any qualifying disability, Plaintiff's claim for disability discrimination under the FHA and FEHA must fail. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's FHA and FEHA disability discrimination claims.

### c. Related Reasonable Accommodation Claims

The above conclusion that Plaintiff cannot prove his claims for failure to reasonably accommodate under the FHA and FEHA also resolves two of Plaintiff's other claims: (1) negligent failure to reasonably accommodate; (2) violation of the Unruh Act.

Plaintiff alleges that Defendants are liable for negligent failure to reasonably accommodate

29

because Defendants denied Plaintiff's request to extend his move-out date. *See* TAC at ¶ 110. However, because Defendants did not fail to provide Plaintiff a reasonable accommodation under the FEHA and FEHA, no Defendant can be liable for a negligent failure to reasonably accommodate—if such an independent tort even exists. *See Elliott v. QF Circa 37, LLC*, 2017 WL 6389775, at *13 (S.D. Cal. Dec. 14, 2017) (holding that the plaintiff's negligence claim premised on a failure to reasonably accommodate rises or falls with the plaintiff's statutory causes of action for failure to accommodate). Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's claim for negligent failure to reasonably accommodate.

Plaintiff alleges that Defendants violated the Unruh Act by failing to extend Plaintiff's move-out date from April 2015 to July 2015. TAC at ¶ 90. The Unruh Act is a California statute that prohibits discrimination in public accommodations, and provides that all people "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). When a plaintiff brings an Unruh Act claim premised on a failure to provide reasonable accommodation, as Plaintiff does, courts analyze the Unruh Act coextensively with any reasonable accommodation claims under the FHA and FEHA. *See, e.g.*, *Mengistu v. Housing Auth. of the City of L.A.*, 742 F. App'x 247, 248 (9th Cir. 2018) (analyzing as a unit plaintiff's claims for failure to reasonably accommodate under Unruh Act, FHA, and FEHA); *McAlister v. Essex Prop. Tr.*, 504 F. Supp. 2d 903, 910 (C.D. Cal. 2007) (holding that resolution of a plaintiff's reasonable accommodation claim under the FHA also resolves a plaintiff's FEHA and Unruh Act reasonable accommodation claims); *Roman v. BRE Props., Inc.*, 237 Cal. App. 4th 1040, 1053 (2015) (same).

Thus, because Plaintiff's FHA and FEHA reasonable accommodation claims fail as a matter of law, so too does Plaintiff's Unruh Act claim. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's Unruh Act claim.

### 2. FHA and FEHA Retaliation Claims

Next, Plaintiff alleges that Defendants violated the FHA and FEHA by retaliating against Plaintiff. TAC at ¶¶ 81–88. Plaintiff's TAC cites instances of alleged retaliation occurring

Case No. 17-CV-00238-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

between December 2008 and April 2015. *Id.* As stated above, any retaliation claims predating January 17, 2015 are barred by the statute of limitations, as both the FHA and FEHA have two-year statutes of limitations. Thus, the Court discusses only the alleged retaliatory acts occurring after January 17, 2015, the date two years before Plaintiff filed his original complaint.

To prove a retaliation claim under the FHA or FEHA, "a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and adverse action." *Walker*, 272 F.3d at 1128.

Defendants argue that Plaintiff's retaliation claims are not viable because Plaintiff cannot show any causal link between any protected activity by Plaintiff and any adverse actions by Defendants, and thus cannot satisfy the third element of his retaliation claims. Mot. at 21. The Court agrees.

In *Dubois*, the Ninth Circuit held that a plaintiff fails to prove a causal link where the plaintiff fails to show that the defendant's adverse actions "were in any way motivated" by plaintiff's protected activity. 453 F.3d at 1180. For example, in *Dubois*, the plaintiff failed to show that the defendant's initiation of foreclosure proceedings against the plaintiff "was motivated by anything other than [the defendant's] desire to collect the money and property that it was potentially entitled to under state law." *Id.*; *see also Roman v. Jefferson at Hollywood LP*, 495 F. App'x 804, 805–06 (9th Cir. 2012) (holding that without facts alleging that defendants' adverse action occurred in response to the plaintiff's protected activity rather than plaintiff's "persistent harassment of [defendants'] leasing staff and other tenants," the plaintiff could not state a claim).

Here, Plaintiff complains that after Plaintiff allegedly petitioned the Palo Alto Postmaster to request standalone mailboxes at Alma Place, "Plaintiff returned to Alma Place to find flyers informing him the stair [sic] could no longer be used and Plaintiff's telecommunication service was cut off." TAC at ¶ 87. However, Plaintiff has not identified any evidence in the record that Plaintiff petitioned the postmaster, that Plaintiff's phone or Internet service were interrupted, or that Defendants were responsible for any such interruption—let alone that an interruption was "in any way motivated" by Plaintiff's alleged petition to the Postmaster. *Dubois*, 453 F.3d at 1179.

31

Plaintiff also complains that Defendants retaliated against Plaintiff by denying Plaintiff's March 30, 2015 request to extend his move out date from April 10, 2015 to July 10, 2015. TAC at ¶ 88. Plaintiff appears to allege that Defendants denied Plaintiff's request in retaliation for Plaintiff's October 28, 2014 complaint to HUD. *Id.* at ¶¶ 86–87.

However, Plaintiff has not shown that Defendants' denial was at all motivated by the HUD complaint, which was resolved against Plaintiff on January 15, 2015, well before Defendants denied Plaintiff's March 30, 2015 request to extend his move-out date. Mascarenhas Decl., Ex. A (HUD's resolution of Plaintiff's complaint).

In the interim between Plaintiff's October 28, 2014 HUD complaint and March 29, 2015 request to extend his move-out date, Plaintiff stopped paying rent to Defendant Alma Place. Mascarenhas Decl., Ex. B (Plaintiff's resident ledger as of January 2015 showing that Plaintiff failed to pay rent for December 2014 and January 2015). On December 8, 2014, Defendant Harrison issued Plaintiff a three-day notice stating that Plaintiff had failed to pay his rent for December 2014. Glaessner Decl., Ex. K (copy of notice). On January 26, 2015, Plaintiff and Alma Place settled the rent dispute. Mascarenhas Decl., Ex. D. In the settlement, Defendants agreed not to pursue Plaintiff's past-due rent and Plaintiff agreed to vacate his unit by April 10, 2015. Mascarenhas Decl. ¶ 11. Thus, Plaintiff himself had agreed to move out of Alma Place by April 10, 2015.

Moreover, when Plaintiff requested to extend his move-out date from April 10, 2015 to July 10, 2015 to accommodate Plaintiff's disability, Defendants denied Plaintiff's request only after Plaintiff failed to provide any documentation to support his request. On April 1, 2015, Defendant Fields gave Plaintiff a form on PAHC Management letterhead titled "Certification of Need for Special Reasonable Accommodation or Special Unit." Glaessner Decl., Ex. I. Plaintiff signed and dated the form, but did not complete the form, did not identify his disability, and did not have a doctor complete the certification. *Id.* at 1. Defendant Fields also gave Plaintiff a form titled "Request for a Reasonable Accommodation" on PAHC Management letterhead, but Plaintiff did not complete that form. *Id.* at 3. Plaintiff conceded at his deposition that he never obtained a

32

doctor's note or any other documentation of his respiratory infection.  West Depo. at 37:5-38:12

("Q: But you never got such a letter?  A: Right.").

In sum, Plaintiff identifies no evidence that Defendants' denial of Plaintiff's extension request was motivated by Plaintiff's HUD complaint.  Without that causal link between Defendants' denial and Plaintiff's protected activity, Plaintiff's FHA and FEHA retaliation claims fail as a matter of law.  *Walker*, 272 F.3d at 1128.  Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's FHA and FEHA retaliation claims.

### 3.  Claims for Violation of §§ 1981–1983

Plaintiff alleges that various Defendants violated 42 U.S.C. §§ 1981–83.  TAC ¶¶ 76–80 (§§ 1981–82), ¶ 114 (§ 1983).  Plaintiff's claims under §§ 1981–83 all fail as a matter of law.

First, Plaintiff's claims under § 1981 and § 1982 are time-barred by the statute of limitations.  The most recent episode Plaintiff discusses under his § 1981 and § 1982 claims in the TAC occurred on December 2, 2014, two years and one month before Plaintiff filed his original complaint.  During HUD's investigation into Plaintiff's housing discrimination complaint, Defendant Alma Place offered Plaintiff another opportunity for Plaintiff to move to Unit 314, "provided that [Plaintiff] accept by close of business on 12/2/14."  Mascarenhas Decl., Ex. A at 11 (HUD resolution of Plaintiff's complaint).  According to HUD, "at around 5:25 p.m. on 12/2/14 the complainant [Plaintiff] emailed a conditional acceptance premised on multiple prerequisites." *Id.*  Accordingly, Defendant Alma Place's offer expired "when [Plaintiff] did not accept within a timely manner, and the unit was offered to another applicant on 12/3/14."  *Id.*

That event occurred on December 2, 2014, more than two years before Plaintiff filed his January 17, 2017 original complaint.  The statute of limitations for § 1981 and § 1982 claims is two years.  *See Wallace*, 549 U.S. at 387 (holding that the statute of limitations for such claims is based on the statute of limitations for personal injury actions in the state in which the cause of action arose); Cal. Civ. Proc. Code § 335.1 (the statute of limitations for personal injury actions in California is two years).  Thus, Plaintiff's § 1981 and § 1982 claims are time-barred.

As for Plaintiff's § 1983 claim, Plaintiff's TAC is not specific about the events giving rise

33

to the § 1983 claim. Plaintiff alleges that "defendants administering the housing programs for the subsized [sic] units defendants were acting under color of law and deprived plaintiff of his rights in the federal programs." TAC at ¶ 114. Defendants contend that even if Plaintiff's § 1983 claim concerns events that are not time-barred, Plaintiff's § 1983 claim fails as a matter of law because none of the Defendants are government officials. Mot. at 21. The Court agrees.

42 U.S.C. § 1983 proscribes only conduct by government actors: "[T]he party charged with the deprivation must be a person who may fairly be said to be a [governmental] actor." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (alteration in original) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrong." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

Here, PAHC, PAHC Management, Barker Hotel, and Alma Place are all private non-profit corporations or limited partnerships. Mascarenhas Decl. at ¶¶ 2–5. The individual Defendants are all employees of PAHC Management. *Id.* at ¶ 3. Plaintiff has produced no contrary evidence.

In limited circumstances, there may be "state action by a private actor sufficient to establish liability for a constitutional tort." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc). Specifically, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted). The Ninth Circuit "start[s] with the presumption that private conduct does not constitute governmental action." *Sutton*, 192 F.3d at 835.

The Ninth Circuit has held that relevant factors to determine whether a close nexus between the state and the action exists when "(1) the organization is mostly comprised of state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Villegas*, 541 F.3d at 955 (citing *Brentwood*, 531 U.S. at 295–99).

1    None of those factors are present in this case.  As stated above, all of the entity Defendants

2    are private non-profit corporations and are not comprised of any state institutions.  Three of the

3    entity Defendants have no employees and there is no evidence that any employees of PAHC

4    Management are state officials that "dominate decision making."  Mascarenhas Decl. at ¶ 3.  Nor

5    is there evidence that any entity Defendants are funded by state institutions or are acting in lieu of

6    a traditional state actor.  Rather, the entity Defendants are private housing developers and

7    landlords.  *Id.* at ¶¶ 2–5.  Plaintiff offers no contrary evidence.

8    Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's

9    claims under §§ 1981–83.

10    **4.  Claim for Violation of the ADA**

11    Plaintiff alleges that Defendants violated the ADA by denying Plaintiff's March 30, 2015

12    request to extend his move-out date from April 2015 to July 2015.  TAC at ¶ 90.  Defendants

13    argue that Plaintiff's ADA claim fails because the ADA does not apply to residential apartments.

14    Mot. at 15.  Defendants are correct.

15    Title III of the ADA prohibits disability discrimination in public accommodations: "No

16    individual shall be discriminated against on the basis of disability in the full and equal enjoyment

17    of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

18    accommodation."  42 U.S.C. § 12182(a).

19    Courts have consistently held that private dwelling units like "apartments and

20    condominiums do not constitute public accommodations within the meaning of the Act."  *Indep.*

21    *Housing Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993); *Green*

22    *v. Mercy Housing, Inc.*, 2018 WL 6704185, at *2 (N.D. Cal. Dec. 20, 2018) ("Residential

23    apartment complexes do not generally fall within the scope of the ADA's definition of public

24    accommodation."); *Wright v. Tenderloin Neighborhood Dev. Corp.*, 2018 WL 3407989, at *4

25    (N.D. Cal. July 11, 2018) ("The ADA only applies to public accommodations, which include

26    hotels and motels, but not residential apartment complexes.") (citation omitted).

27    Here, Alma Place is a residential apartment complex.  *See, e.g.*, Mascarenhas Decl., Ex. A

28

35

1    (HUD resolution of Plaintiff's complaint describing Alma Place as "a multifamily property with

2    approximately 107 units"); Glaessner Decl., Ex. J (residential lease agreement between Alma

3    Place and Plaintiff effective July 30, 2011). Thus, Plaintiff's ADA claim against Defendants fails

4    as a matter of law. Accordingly, the Court grants Defendants' motion for summary judgment on

5    Plaintiff's ADA claim.

6        **5. Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith
7        and Fair Dealing**

8        Next, Plaintiff claims that Defendants are liable for breach of contract and breach of the

9    covenant of good faith and fair dealing. TAC at ¶¶ 100, 112. Specifically, Plaintiff alleges that he

10   entered a lease with Defendant Alma Place in 2011, and that Defendants Mascarenhas, Harrison,

11   Fields, and Granadosin breached that lease. *Id.*

12       However, Plaintiff's TAC appears to have no remaining viable breach of contract claim.

13   In the Court's order on Defendants' motion to dismiss, the Court dismissed Plaintiff's breach of

14   contract claims against Defendants Mascarenhas, Harrison, Fields, and Granadosin because

15   Plaintiff did "not allege that he contracted with any of the Individual Defendants." ECF No. 109

16   at 11. Although the Court granted Plaintiff leave to amend, Plaintiff did not file a fourth amended

17   complaint with breach of contract claims against any Individual Defendants. Moreover, Plaintiff

18   does not allege that Defendant Alma Place breached the lease agreement between Plaintiff and

19   Defendant Alma Place. *See* TAC ¶ 100 (alleging only that Defendants Mascarendas [sic],

20   Harrison, Fields, Granadosin breached paragraphs 11, 13, 20, 21, 39, and the Alma Place

21   grievance process").

22       Even if Plaintiff's TAC is construed to allege that Defendant Alma Place breached the

23   lease agreement or the implied covenant of good faith and fair dealing, Plaintiff's claim fails. To

24   prove a breach of contract claim, Plaintiff must show: "(1) the existence of the contract, (2)

25   plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting

26   damages to the plaintiff." *Oasis W. Reality, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

27   Similarly, because "a breach of the implied covenant is necessarily a breach of contract," *Digerati*

28
                                              36

*Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 885 (2011), Plaintiff must also show the existence of a contract and Plaintiff's performance of Plaintiff's contractual obligations to prove a claim for breach of the implied covenant of good faith and fair dealing.

As Defendants argue, Plaintiff has failed to show that Plaintiff complied with the lease agreement, let alone to provide evidence of any breach by Defendant Alma Place.

First, Plaintiff failed to prove performance or provide an excuse for nonperformance. Specifically, in December 2014 and January 2015, Plaintiff failed to pay rent in violation of his lease agreement. Mascarenhas Decl., Ex. B (Plaintiff's resident ledger as of January 2015 showing that Plaintiff failed to pay rent for December 2014 and January 2015). As a result, on December 8, 2014, Defendant Harrison issued Plaintiff a three-day notice stating that Plaintiff had failed to pay his rent for December 2014. Glaessner Decl., Ex. K (copy of three-day notice). At his deposition, Plaintiff conceded that Plaintiff did not pay rent in December 2014. West Depo. 218:22-24, 219:22-25. By doing so, Plaintiff breached his lease agreement, which requires payment of rent "on the first day of each month, during the terms of this Lease." Glaessner Decl., Ex. J, at ¶ 3 (Plaintiff's lease agreement). Thus, Plaintiff did not perform his obligations under the lease. Moreover, Plaintiff has provided no evidence that Defendant Alma Place breached any terms of the lease agreement. Thus, Plaintiff cannot prove at least two elements of his claims for breach of contract and breach of the covenant of good faith and fair dealing, and those claims fail as a matter of law. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's claims breach of contract and breach of the covenant of good faith and fair dealing.

### 6. Claims for Violation of the Rehabilitation Act and California Government Code § 11135

Next, Plaintiff alleges that Defendants violated the Rehabilitation Act and California Government Code § 11135. TAC at ¶ 74. However, as Defendants point out, Defendants cannot be liable under either statute because the statutes apply only to entities receiving government funding, and Defendants receive no such funding.

The Rehabilitation Act prohibits disability discrimination "under any program or activity

United States District Court
Northern District of California

receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). Only a federal agency or a private entity receiving funds from the federal government can be liable under the Rehabilitation Act. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986) (concluding that commercial airline was not liable under the Rehabilitation Act based on federal grants to airport operators because commercial airlines did not "receive" those federal funds).

Thus, to establish a violation of the Rehabilitation Act, a plaintiff must show that (1) he is disabled within the meaning of the Rehabilitation Act; (2) he is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of his disability; and (4) the program providing the benefit or services receives federal financial assistance. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

However, Plaintiff has not identified any evidence that any of the entity Defendants receives federal financial assistance. Rather, all of the entity Defendants are either private non-profit corporations or limited partnerships. Mascarenhas Decl. at ¶¶ 2–5.

California Government Code § 11135 is "identical to the Rehabilitation Act except that the entity must receive State financial assistance rather than Federal financial assistance." *Y.G. v. Riverside Unified Sch. Dist.*, 774 F. Supp. 2d 1055, 1065 (C.D. Cal. 2011). Specifically, § 11135 prohibits discrimination under "any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." Cal. Gov't Code § 11135(a). To prove a claim under § 11135, a plaintiff must show that the defendant program or activity receives direct funding or financial assistance from the state. *Darensburg v. Metro. Transp. Comm'n*, 611 F. Supp. 2d 994, 1041 (N.D. Cal. 2009).

Here, Defendants argue that although Alma Place receives state tax credits, these tax credits do not qualify as financial assistance or "direct" public funding. Mot. at 20; *see also* Glaessner Decl., Ex. J, at ¶ 9 (Plaintiff's lease with Defendant Alma Place stating that Alma Place receives state tax credits). In the analogous Rehabilitation Act context, courts have uniformly

38

determined that tax credits do not constitute financial assistance. *See, e.g.*, *Chaplin v. Consol. Edison Co. of N.Y., Inc.*, 628 F. Supp. 143, 145–46 (S.D.N.Y. 1985) (holding that defendant's receipt of tax credits did not subject the defendant to liability under the Rehabilitation Act); *Martin v. Delaware Law Sch. of Widener Univ.*, 625 F. Supp. 1288, 1302 n.13 (D. Del. 1985) (holding that financial assistance "connotes the transfer of government funds by way of subsidiary, not merely exemption from taxation").

Indeed, regulations implementing the Rehabilitation Act—on which California Government Code § 11135 is based—define federal financial assistance to mean "any grant, loan, contract" under which the government provides funds, services, or interests in or proceeds from real property. 45 C.F.R. § 84.3(h). The regulations do not identify tax credits or deductions under the definition of financial assistance. Similarly, in other contexts, California courts have determined that tax credits do not constitute the payment of public funds. *See State Bldg. & Constr. Trades Council of Cal. v. Duncan*, 162 Cal. App. 4th 289, 312 (2008) (noting the "impressive body of authority . . . that excludes tax credits from the category of goods and services that amount to public assets or are treated as the equivalent of money").

Therefore, the weight of authority indicates that tax credits do not constitute financial assistance under California Government Code § 11135, and that Defendant Alma Place's receipt of state tax credits cannot subject Alma Place to liability under § 11135.

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's claims under the Rehabilitation Act and California Government Code § 11135.

### 7. Claims for Criminal Violations of Mail and Theft Statutes

Plaintiff alleges that Defendants violated 18 U.S.C. §§ 1701-1703 and § 1708, which are criminal statutes related to theft of the United States mail. TAC at ¶¶ 76-80. Plaintiff also alleges that Defendants violated California Penal Code § 530.5, which makes it a crime to "willfully obtain[] personally identifying information . . . and use[] that information for any unlawful purpose." Cal. Penal Code § 530.5(a).

Defendants argue that Plaintiff's claims must fail because there is no private right of action

39

for criminal violations of the federal mail codes or of California Penal Code § 530.5. Mot. at 21. Defendants are correct.

None of the federal criminal statutes Plaintiff cites in his TAC expressly provide a private right of action. The United States Supreme Court has held that "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone," does not give rise to an implied civil right of action. *Cort v. Ash*, 422 U.S. 66, 79–80 (1975). Plaintiff identifies no such indication in any of the criminal statutes Plaintiff cites. Further, courts have uniformly held that the federal mail theft statutes do not provide a private civil cause of action. *See Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 103 n.7 (2d Cir. 1981) (18 U.S.C. §§ 1701–03 do not provide a private civil right of action); *Woods v. McGuire*, 954 F.2d 388, 391 (6th Cir. 1992) ("[F]ederal courts uniformly have held that there is no private right of action under [18 U.S.C. § 1703].")); *Diaz v. City of San Fernando*, 2015 WL 13237402 (C.D. Cal. Jun. 18, 2015) (concluding that there is no private right of action for violation of 18 U.S.C. § 1708).

Plaintiff has also identified no private right of action under California Penal Code § 530.5. Although California courts have concluded that a plaintiff may bring a civil conversion claim premised on the theft of personal identifying information under § 530.5, *see CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860 (2006), no court has concluded that a plaintiff may himself prosecute a criminal case against a defendant for violation of § 530.5. Plaintiff's TAC does not include a claim for conversion. *See generally* TAC.

Regardless of whether Plaintiff can maintain a private action against Defendants, Plaintiff has not identified any evidence that any of the Defendants stole Plaintiff's mail. The only record evidence related to the mail is Plaintiff's testimony that he had complained about the mail at Alma Place: "And when we were arguing about and having conflicts and disagreements about a variety of things living there at Alma Place, with the mail being one of them." West Depo. at 76:19-22. Thus, even if Plaintiff had a private right of action, Plaintiff has not offered proof that any Defendant violated either the federal mail statutes or California Penal Code § 530.5.

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's

40

claims for violation of 18 U.S.C. §§ 1701–03, 1708, and California Penal Code § 530.5.

**8. Claim for Violation of California's UCL**

Next, Plaintiff alleges that Defendants violated California's UCL. The UCL includes three prongs for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *Lozano v. AT &T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

Plaintiff alleges an unlawful prong claim based on an alleged violation of the Palo Alto Municipal Code: "Plaintiff alleges that in defendants doing the acts described above defendants violate Palo Alto Municipal law that Chapter 9.73 against arbitrary discrimination." TAC at ¶ 105. Plaintiff also alleges an unfair prong claim predicated on the same unspecified acts: "Plaintiff alleges that the acts and conduct of defendants described above constitute unfair and deceptive business practice [sic] and are unlawful activities." TAC at ¶ 108. Defendants argue that Plaintiff cannot prove his UCL claims against any Defendants because Plaintiff has failed to adduce any evidence that Defendants violated the Palo Alto Municipal Code. Mot. at 23.

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotation marks and citations omitted). Thus, to prove an unlawful prong UCL claim, Plaintiff must show that Defendants violated another law—in this instance, Palo Alto Municipal Code Chapter 9.73. *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014).

The municipal code states that Palo Alto's city policy is "to protect and safeguard the right and opportunity of every person to free from arbitrary discrimination." Palo Alto Municipal Code § 9.73.010. Chapter 9.73 states that the following city activities are subject to the prohibition against arbitrary discrimination: "(1) Employment by the city of Palo Alto; (2) Persons performing services, providing goods, or constructing public works on behalf of the city of Palo Alto; (3) Persons receiving funding, grants or subsidies from the city of Palo Alto; and (4) City recreational, educational or other programs and activities of any kind." *Id.* at § 9.73.030.

Here, Plaintiff has not shown that any Defendants received city funding such that

Defendants are subject to Chapter 9.73. Although Plaintiff's TAC alleges that Defendant PAHC was "created by the City of Palo Alto," TAC at ¶ 5, the record evidence shows that Defendant PAHC "is a private entity and a California non-profit public benefit corporation." Mascarenhas Decl. at ¶ 5. Thus, Plaintiff's unlawful prong UCL claim premised on a violation of Chapter 9.73 must fail. Nor, as discussed above, has Plaintiff succeeded on any of his other claims of race or disability discrimination.

As for Plaintiff's unfair prong claim, the unfair prong of the UCL prohibits a business practice that "violates established public policy or if it immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). "[C]ourts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017); *see also In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (dismissing unfair prong UCL cause of action where "plaintiffs' unfair prong claims overlap entirely with their claims of fraud").

Here, the factual predicate for Plaintiff's unfair prong claim "overlap[s] entirely" with the factual predicate for Plaintiff's unlawful prong claim. In both, Plaintiff complains of "acts and conduct of defendant described above," and Plaintiff's unfair prong claim alleges that Defendants' actions are "unlawful activities." TAC at ¶¶ 105, 108. Because Plaintiff's unlawful prong claim cannot survive, Plaintiff's unfair prong also must fail. *Hadley*, 243 F. Supp. 3d at 1105.

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's UCL claims.

### 9. Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress Claims

Next, Plaintiff alleges that Defendants are liable for IIED. TAC at ¶¶ 102–03. To prove

42

an IIED claim, Plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). To be outrageous conduct, the conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

Defendants contend that Plaintiff cannot prove any elements of his IIED claim, and that "Defendants' conduct here does not come close to extreme or outrageous." Mot. at 22. The Court agrees with Defendants.

The only event alleged in Plaintiff's TAC that occurred within the two-year statute of limitations period is Defendant's denial of Plaintiff's request to extend his move-out date from April 10, 2015 to July 10, 2015. Defendants denied Plaintiff's March 29, 2015 request to extend his move-out date from April 10, 2015 to July 10, 2015 only after Plaintiff failed to provide any documentation of his alleged disability or his respiratory infection. *See* Glaessner Decl., Ex. I (PAHC disability certification form that Plaintiff received but failed to complete).

As set forth above, Plaintiff has failed to produce any evidence to establish a genuine dispute of material fact as to whether Defendants discriminated against Plaintiff on the basis of race or disability. *See Tuggles v. City of Antioch*, 2009 WL 1066169, at *29 (N.D. Cal. Oct. 2, 2009) (holding that where there are triable issues on a discrimination claim, a plaintiff also has raised a triable issue on an IIED claim); *Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1157 (C.D. Cal. 2001) (a plaintiff may survive a motion for summary judgment on an IIED claim only where "reasonable minds may differ" about whether a defendant's conduct "transcended the bounds of behavior usually tolerated in a civilized society").

Here, no reasonable mind could believe that Defendants' denial of Plaintiff's move-out request transcended the bounds of reasonableness, where (1) Defendants and Plaintiff reached an agreement for Plaintiff to move out by April 10, 2015, Mascarenhas Decl. at ¶ 11; (2) Plaintiff sent Defendants' attorney a letter on March 29, 2015—12 days before the April 10, 2015 move-

out date—to request a three-month extension to July 10, 2015, Glaessner Decl., Ex. G; and (3) Plaintiff failed to provide any documentation supporting his request. West Depo. at 37:5-38:12. Thus, Plaintiff's IIED claim must fail.

Although Plaintiff also brings a claim for negligent infliction of emotional distress, TAC at ¶¶ 102–03, "[n]egligent infliction of emotional distress is not an independent tort." *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 876 (2010) (internal quotation marks and citation omitted).

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's claims for IIED and negligent infliction of emotional distress.

### 10. Negligent Failure to Prevent Discrimination or Retaliation

Next, Plaintiff alleges that Defendant Gonzalez is liable for "negligence [sic] failure to prevent retaliation, train and supervise." TAC at ¶ 106. Plaintiff brings this claim only against Defendant Gonzalez. *See id.* (alleging that Defendant Gonzalez "failed to fulfill her contractual obligation and her responsibility"). However, the Court previously dismissed Plaintiff's failure to train claim against Defendant Gonzalez, and Plaintiff failed to reallege the claim. *See* ECF No. 109 at 11.

To the extent that Plaintiff alleges that other Defendants are liable for failure to prevent discrimination, Plaintiff has not made the predicate showing of a genuine dispute of material fact as to whether any Defendant discriminated against Plaintiff. *See Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 288–89 (holding that a plaintiff cannot recover for failure to prevent discrimination or harassment without a finding that discrimination or harassment actually occurred).

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's negligent failure to prevent discrimination or retaliation claim.

### 11. Bane Act

Lastly, Plaintiff alleges that Defendants violated the Bane Act, Cal. Civ. Code § 52.1. TAC at ¶ 113. Plaintiff alleges "that in the acts describe [sic] above defendants sort [sic] to

44

intimidate, harass, and coerce," and that Defendants "subject Plaintiff to acts of assault and battery." *Id.*

The Bane Act prohibits the "interfere[nce] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(b). To prove a Bane Act claim, a plaintiff must show (1) a violation of a "state or federal constitutional or legal right"; and (2) that the violation was achieved through "threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

As Defendants point out, Plaintiff has not identified evidence in the record of any threats, nor even alleged any specific threats in the TAC. Mot. at 24. Plaintiff's TAC includes no specific threats or acts of intimidation or coercion. Nor in connection with the instant motion for summary judgment has Plaintiff identified any evidence of threats or coercion, and Plaintiff has thus not raised a genuine dispute of material fact on his Bane Act claim. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's Bane Act claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: June 20, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California